N. PATRICK CROOKS, J.
¶ 1. Andre Chamblis (Chamblis) pleaded guilty to operating with a prohibited alcohol concentration (PAC) as a sixth offense in violation of Wis. Stat. § 346.63(l)(b) (2011-12).[1] Prior to accepting the plea, the circuit court[2] informed Chamblis that the offense constituted a Class H felony which carried a minimum penalty of 6 months imprisonment and a $600 fine and a maximum penalty of 6 years imprisonment (three years confinement and three years extended supervision) and a $10,000 fine. Wis. Stat. §§ 346.65(2)(am)5., 939.50(3)(h)., 973.01(2)(b)8. The circuit court ultimately sentenced Chamblis to four years imprisonment comprised of two years confinement and two years extended supervision.
¶ 2. The State appealed the judgment of conviction. It argued that the circuit court erred by excluding additional evidence the State sought to submit to prove that Chamblis possessed a sixth prior drunk-driving related conviction. Had the circuit court admitted the *376 evidence and found it sufficient to establish the alleged prior conviction, Chamblis would have faced the decision to plead guilty to the charge of operating with a PAC as a seventh offense. That offense constituted a Class G felony and would have subjected Chamblis to an increased range of punishment. Wis. Stat. § 346.65(2)(am)6. Specifically, the minimum penalty for a seventh offense was a term of imprisonment that included three years confinement and a period of extended supervision. Id. The maximum penalty was 10 years imprisonment (five years confinement and five years extended supervision) and a $25,000 fine. Wis. Stat. §§ 973.01(2)(b)7., 939.50(3)g.
¶ 3. The court of appeals agreed that the circuit court erred in excluding the additional evidence. It further determined that the evidence was sufficient to prove the alleged prior conviction. As a result, the court of appeals reversed the judgment of conviction and remanded the case to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense.[3]
¶ 4. This case presents two issues for our review. The first is whether the circuit court erred in excluding the additional evidence the State sought to submit to enhance Chamblis's punishment on the basis that the State offered the evidence "too late." The second is whether the court of appeals' remedy violates Chamblis's right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary.
*377 ¶ 5. We assume, without deciding, that the circuit court erred in excluding the additional evidence the State sought to submit to enhance Chamblis's punishment.
¶ 6. Although we assume error, we hold that the court of appeals' decision remanding the case to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense violates Chamblis's right to due process. Chamblis entered a knowing, intelligent, and voluntary-guilty plea to operating with a PAC as a sixth offense, not as a seventh offense. Because a seventh offense carries a greater range of punishment than does a sixth offense, the court of appeals' remedy renders Chamblis's plea unknowing, unintelligent, and involuntary. We further conclude that a remedy which requires Chamblis to withdraw his guilty plea is fundamentally unfair and thus violative of due process under the facts of this case.
¶ 7. Accordingly, we reverse the decision of the court of appeals and uphold Chamblis's conviction.
I. FACTS AND PROCEDURAL HISTORY
¶ 8. On November 22, 2011, Chamblis was arrested on suspicion of operating a vehicle while under the influence of an intoxicant (OWI) in La Crosse. The criminal complaint, dated November 30, 2011, charged Chamblis with the following: (1) OWI as a fifth or sixth offense and as a repeater contrary to Wis. Stat. § 346.63(l)(a); (2) operating with a PAC as a fifth or sixth offense and as a repeater contrary to Wis. Stat. § 346.63(l)(b); and (3) obstructing an officer as a re *378 peater contrary to Wis. Stat. § 946.41(1).[4] The criminal complaint alleged that Chamblis possessed five prior drunk-driving related convictions from Minnesota for the purpose of penalty enhancement under Wis. Stat. § 346.65(2)(am).[5]
¶ 9. In January 2012, the circuit court granted the State's motion to amend the information[6] to charge Chamblis with OWI as a seventh, eighth, or ninth offense and as a repeater, and operating with a PAC as a seventh, eighth, or ninth offense and as a repeater. The State claimed that Chamblis had two prior drunk-driving related convictions from Illinois in addition to the five from Minnesota and submitted documentation to that effect.
¶ 10. On August 6, 2012, Chamblis filed a motion challenging the purported Illinois convictions on two grounds that are relevant here. First, he argued that the two alleged convictions should be counted as one *379 conviction because they stemmed from the same incident. Second, he contended that the State had offered insufficient documentation to prove the purported convictions.
¶ 11. The circuit court held a hearing on Chamblis's motion on September 12, 2012. The circuit court agreed that the two alleged Illinois convictions should be treated as one conviction. However, it determined that the State's proffered evidence of the purported conviction — an Illinois driver's abstract — was insufficient to establish that Chamblis had been convicted of a drunk-driving related offense in Illinois. In rendering its decision, the circuit court recognized that "we are not at sentencing" and "there could be further proof that comes up." It informed the prosecutor that if "more evidence is supplied ... we will review it at that point in time . . . ."
¶ 12. At the final pretrial hearing on September 14, 2012, the parties informed the circuit court that Chamblis wished to enter a guilty plea. Neither the parties nor the circuit court raised the issue of the disputed Illinois conviction. Because the State intended to request a presentence investigation report, the circuit court did not schedule a sentencing hearing to go along with the plea date.
¶ 13. Chamblis's plea hearing took place on September 19, 2012. The parties advised the circuit court that Chamblis planned to enter a guilty plea to operating with a PAC as a fourth offense "or greater" without a repeater.[7] Chamblis was willing to admit to the five prior convictions from Minnesota but continued to dispute the alleged conviction from Illinois. *380 Accordingly, a question remained whether Chamblis would face the penalty range for operating with a PAC as a sixth offense or as a seventh offense upon conviction.
¶ 14. Recognizing the uncertainty regarding Chamblis's potential punishment, defense counsel stated on the record the minimum and maximum penalties for both offenses. Defense counsel then expressed his confusion with handling the plea in such a manner. This prompted the circuit court to inquire into the status of the alleged Illinois conviction. The prosecutor explained that he had obtained additional information from Illinois and that he planned to submit an offer of proof prior to sentencing. Defense counsel objected to the State offering the new evidence at that point in the proceedings.
¶ 15. The circuit court determined that the State was attempting to offer the additional evidence "too late." It reasoned that Chamblis could not enter a knowing, intelligent, and voluntary guilty plea without understanding the precise minimum and maximum penalties associated with the plea. Determining that it was unfair to put off the plea date, the circuit court declared that discovery was "done." It noted that the case had "been set for trial a long time"; that the issue concerning proof of the purported Illinois conviction "was flagged a long time ago"[8]; and that the issue prevented the parties from resolving the case "in a way that would have made more sense months ago . ..." As a result of its decision, the circuit court indicated that *381 it would accept a plea only to the lower charge of operating with a PAC as a sixth offense.
¶ 16. The State chose to go through with the plea agreement anyway. The circuit court then personally addressed Chamblis to ensure that he understood the nature of the charge and the implications of the plea. It began by asking whether Chamblis understood the plea agreement "at this point in time," to which Chamblis responded "I do now, sir." The circuit court proceeded to explain the minimum and maximum penalties commensurate with a conviction for operating with a PAC as a sixth offense. Upon accepting the plea, the circuit court sentenced Chamblis to four years imprisonment comprised of two years confinement and two years extended supervision.
¶ 17. The State appealed the judgment of conviction. The court of appeals determined that the circuit court erred in excluding the State's additional evidence for two reasons. First, this court's decisions in State v. McAllister, 107 Wis. 2d 532, 539, 319 N.W.2d 865 (1982), and State v. Wideman, 206 Wis. 2d 91, 104-05, 556 N.W.2d 737 (1996), provide a general rule that prior drunk-driving related convictions must be proved before sentencing. Second, the circuit court "explicitly invited" the State to bring forth additional evidence of the alleged Illinois conviction prior to sentencing. The court of appeals further concluded that the additional evidence sufficiently established that Chamblis had been convicted of a drunk-driving related offense in Illinois.
¶ 18. Consequently, the court of appeals reversed the judgment of conviction and remanded the case to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh *382 offense. In fashioning its remedy, the court of appeals rejected Chamblis's contention that such relief would violate his constitutional right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary.[9] The court of appeals reasoned that Chamblis was "aware both of the 'specific penalty' he faced if convicted of operating with a PAC as a seventh offense, and that he faced this possible punishment if the State succeeded in proving the purported Illinois conviction."
¶ 19. We granted Chamblis's petition for review.
II. STANDARD OF REVIEW
¶ 20. We are asked to decide whether the circuit court erred in excluding the additional evidence the State sought to submit at Chamblis's plea hearing. We review that decision under the erroneous exercise of discretion standard. Martindale v. Ripp, 2001 WI 113, ¶ 28, 246 Wis. 2d 67, 629 N.W.2d 698. "In making evidentiary rulings, the circuit court has broad discretion." Id. "As with other discretionary determinations, this court will uphold a decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." Id.
¶ 21. We are also asked to determine whether the court of appeals' remedy in this case violates *383 Chamblis's right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary. This presents a question of constitutional fact. State v. Bollig, 2000 WI 6, ¶ 13, 232 Wis. 2d 561, 605 N.W.2d 199. "We will not upset the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous." Id. "We review constitutional issues independently of the determinations rendered by the circuit court and the court of appeals." Id.
III. DISCUSSION
¶ 22. Both issues in this case require us to examine the legal principles fundamental to guilty pleas. Accordingly, we begin by discussing the constitutional standard that a guilty plea be affirmatively shown to be knowing, intelligent, and voluntary. We then proceed to consider whether the circuit court erred in excluding the additional evidence the State sought to submit to enhance Chamblis's punishment. We assume without deciding that the decision was error. We next address whether the court of appeals' remedy violates Chamblis's right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary, concluding that it does. Finally, we explain why a remedy which requires Chamblis to withdraw his guilty plea is fundamentally unfair and thus violative of due process under the facts of this case.
A. Analytical Framework
¶ 23. Since "[s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial," Boykin v. Alabama, 395 U.S. 238, 243 (1969), funda *384 mental due process requires that a plea be knowing, intelligent, and voluntary. State v. Cross, 2010 WI 70, ¶ 16, 326 Wis. 2d 492, 786 N.W.2d 64. A defendant contemplating a guilty plea must possess "sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). Relevant circumstances include the nature of both the charge to which the defendant is pleading and the constitutional rights he or she is waiving. State v. Van Camp, 213 Wis. 2d 131, 139-40, 569 N.W.2d 577 (1997). In this case, however, we are concerned with the constitutional requirement that defendants understand the " 'direct consequences' of their pleas." Bollig, 232 Wis. 2d 561, ¶ 16 (quoting Brady, 397 U.S. at 755).
¶ 24. "A direct consequence represents one that has a definite, immediate, and largely automatic effect on the range of defendant's punishment." Id. "Matters concerning the nature of the sentence that could be imposed are most likely to be viewed as direct consequences." 5 Wayne R. LaFave, Criminal Procedure § 21.4(d), 817 (3d ed. 2007). Accordingly, the general practice is to advise defendants of the minimum and maximum penalties associated with a plea. Id.; see also State v. Erickson, 53 Wis. 2d 474, 479-80, 192 N.W.2d 872 (1972) (discussing the importance of informing the defendant of the maximum penalty possible upon entry of a plea); State v. Mohr, 201 Wis. 2d 693, 700, 549 N.W.2d 497 (Ct. App. 1996) (holding that circuit courts must advise defendants of the presumptive minimum sentence associated with a plea).
¶ 25. A defendant's failure to understand the precise maximum punishment is not necessarily a due *385 process violation. Cross, 326 Wis. 2d 492, ¶ 37 (holding that there is no due process violation where the sentence communicated to the defendant is higher, but not substantially higher, than that authorized by law). However, "when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk . . . ." Id., ¶ 39. Indeed, this court has previously recognized that "[c]oncepts of fundamental fairness require that a defendant not receive a greater sentence of imprisonment than that which he was told he could receive on pleading guilty." Garski v. State, 75 Wis. 2d 62, 76, 248 N.W.2d 425 (1977); accord Hart v. Marion Corr. Inst., 927 F.2d 256, 259 (6th Cir. 1991) (holding that the defendant's due process rights were violated when he was given a sentence higher than that which he believed to be the maximum when he pleaded guilty).
¶ 26. To ensure that a guilty plea is knowing, intelligent, and voluntary, Wis. Stat. § 971.08, State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and subsequent cases impose certain procedural duties on circuit courts. State v. Brown, 2006 WI 100, ¶ 23, 293 Wis. 2d 594, 716 N.W.2d 906. In Brown, we reiterated that one of those duties is to notify the defendant of the direct consequences of his or her plea. Id., ¶ 35. Relatedly, we explained that circuit courts must "[establish the defendant's understanding of the . . . range of punishments to which he is subjecting himself by entering a plea . ..." Id. (citing Bangert, 132 Wis. 2d at 262; Wis. Stat. § 971.08(l)(a)). However, a circuit court's failure to comply with the above duties is not a per se due process violation, as it is possible that the defendant may learn of the implications of his or her plea from another source. See Bangert, 131 Wis. 2d at
*386 272-76. That is why we consider the totality of the circumstances in determining the knowing, intelligent, and voluntary nature of a plea. Id. at 258.
¶ 27. The bottom line is that a plea made in ignorance of its direct consequences is not knowing, intelligent, and voluntary. In such situations, the plea "has been obtained in violation of due process and is therefore void." McCarthy v. United States, 394 U.S. 459, 466 (1969).
B. Error
¶ 28. We now turn to consider whether the circuit court erred in excluding the additional evidence the State sought to submit to prove that Chamblis possessed a sixth prior drunk-driving related conviction for the purpose of increasing his punishment. As noted, the circuit court determined that the additional evidence was untimely. Its reasoning was two-fold: (1) Chamblis could not enter a knowing, intelligent, and voluntary guilty plea without understanding the precise minimum and maximum penalties associated with the plea; and (2) it was unfair to put off the plea date given the State's action in delaying the proceedings by failing to obtain the evidence sooner.
¶ 29. The parties focus their arguments on whether the circuit court mistakenly believed it needed to determine the number of prior convictions that would count toward sentencing before accepting Chamblis's guilty plea.
¶ 30. Chamblis argues that in the context of a guilty plea a circuit court must determine the number of prior convictions that will count toward sentencing before accepting the plea. According to Chamblis, this *387 is to ensure that a defendant understands the direct consequences of his or her plea. To support his position, Chamblis notes that under Wis. Stat. § 346.65(2)(am), the number of prior convictions influences the severity of a defendant's punishment for operating with a PAC.
¶ 31. The State contends that it has until sentencing to prove the prior convictions, citing to our decisions in McAllister and Wideman for support. It also argues that the statutory scheme governing the penalties for operating with a PAC requires that a circuit court determine the number of prior convictions at the time of sentencing, once a defendant has pleaded guilty or no contest or been found guilty at trial. Where a defendant wishes to enter a guilty plea and disputes the number of prior convictions, the State maintains that a circuit court could simply advise the defendant of the different ranges of punishment that he or she might face depending on how the issue is resolved. For example, in this case, the circuit court could have informed Chamblis of the range of penalties for operating with a PAC as a sixth offense and as a seventh offense.
¶ 32. The circuit court correctly recognized that there are situations in which a determination of prior convictions for sentence enhancement should be made before accepting a guilty plea in order to ensure the knowing, intelligent, and voluntary nature of the plea. In a case like this one, where the defendant disputes the number of prior convictions and the issue affects the range of punishment he faces upon conviction, the better practice is to determine the number of prior *388 convictions before accepting the plea. This assures that a defendant understands the direct consequences of his or her plea.
¶ 33. Our decisions in McAllister and Wideman do not compel a different conclusion. In McAllister, we held that prior violations of Wis. Stat. § 346.63(1) are not "elements of the crime of driving or operating a motor vehicle while under the influence of an intoxicant or a controlled substance, thereby requiring that the question of their existence be submitted to the jury." McAllister, 107 Wis. 2d at 532-33. In Wideman, we concluded that the requirements for establishing prior offenses set forth in Wis. Stat. § 973.12(1), the general repeat offender statute, are not applicable to establishing prior offenses under Wis. Stat. § 346.65(2), the OWI/PAC penalty enhancement statute. Wideman, 206 Wis. 2d at 94-95. In both cases, we made general statements supporting the proposition that the State may prove prior drunk-driving related convictions for sentence enhancement "before sentencing" or "at sentencing." See McAllister, 107 Wis. 2d at 539; Wideman, 206 Wis. 2d at 108. However, in both McAllister and Wideman, the defendant was convicted after a trial in which the State did not need to prove the prior drunk-driving related convictions to meet the elements of the substantive charge. McAllister, 107 Wis. 2d at 532-33. Thus, McAllister and Wideman are inapposite, as neither case dealt with the constitutional considerations that are at stake where a defendant wishes to enter a guilty plea and disputes the number of prior convictions that will count toward enhancing his or her punishment.
*389 ¶ 34. The statutory scheme governing the penalties for operating with a PAC does not undermine our determination either. The State argues that the plain language of Wis. Stat. §§ 343.307(1)[10] and 346.65(2)(am)6[11] provides that the time for counting the number of prior convictions for sentence enhance *390 ment is at sentencing, once there has been a conviction for the underlying offense. Under the State's interpretation, there will be instances in which a defendant enters a guilty plea without understanding the direct consequences of that decision. Specifically, the State reasons, "[i]n a case in which the court does not impose sentence immediately after accepting the plea, the court cannot definitely tell the defendant how many convictions will be counted because, the court cannot know how many convictions the defendant will have at the time of sentencing."
¶ 35. We see nothing in the plain language of Wis. Stat. §§ 343.307(1) and 346.65(2)(am)6 that prevents a circuit court from determining the number of prior convictions that will count toward sentencing prior to accepting a plea in order to ensure the knowing, intelligent, and voluntary nature of the plea. We further note that the State's interpretation raises constitutional concerns that we wish to avoid. See Am. Family Mut. Ins. Co. v. Wisconsin Dep't of Revenue, 222 Wis. 2d 650, 667, 586 N.W.2d 872 (1998) ("A cardinal rule of statutory interpretation is that the legislature intended to adopt a constitutional statute and that a court should preserve a law and hold it constitutional when possible.").[12]
*391 ¶ 36. We acknowledge the State's contention that in a case like this one, a circuit court could ensure that a defendant understands the direct consequences of his or her plea by informing the defendant of the different ranges of punishment that are possible depending on how many prior convictions the State later establishes. While that approach may be constitutionally permissible in a particular case, we note that the penalty ranges could vary dramatically depending on the number of prior convictions the defendant disputes. See Wis. Stat. § 346.65(2)(am)l.-7. For that reason, the better practice in this type of situation is to determine the number of prior convictions that will count toward sentencing prior to accepting the plea.
¶ 37. Although we conclude that the circuit court correctly recognized the need to determine the number of prior convictions before accepting Chamblis's guilty plea, the question remains whether the circuit court reasonably excluded the State's additional evidence of the purported Illinois conviction after explicitly welcoming the evidence a week earlier.
¶ 38. At the motion hearing on September 12, 2012, the circuit court made several statements indicating that it would consider additional evidence of the alleged Illinois conviction if the State came up with anything. Two days later, at the final pre-trial hearing, the parties informed the circuit court that Chamblis wished to enter a guilty plea. Notwithstanding the circuit court's inclination to determine the number of prior convictions that would count toward sentencing before accepting the plea, there was no discussion of the status of the purported Illinois conviction. Under these circumstances, we can see why the prosecutor thought he had time to submit the additional evidence.
*392 ¶ 39. That said, our review of the plea hearing transcript indicates that the circuit court was extremely frustrated with the manner in which the State prosecuted this case. As we explained at the outset of this opinion, the issue of the alleged Illinois conviction appeared to delay the resolution of this matter. Given the situation presented, we understand the circuit court's desire to move the case forward and accept Chamblis's guilty plea at the September 19 hearing. Thus, we assume, without deciding, that the circuit court erred in excluding the State's additional evidence of the purported Illinois conviction.
C. Remedy
i. The court of appeals' remedy
¶ 40. Assuming error, we proceed to consider whether the court of appeals' remedy in this case — a remand to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense — violates Chamblis's right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary.
¶ 41. Chamblis argues that the court of appeals' remedy invalidates his guilty plea. He maintains that he entered a guilty plea to the charge of operating with a PAC as a sixth offense with an understanding that, as a direct consequence of his decision, he faced a maximum penalty of 6 years imprisonment and a $10,000 fine. He notes that the maximum penalty commensurate with a conviction for operating with a PAC as a seventh offense is more punitive: 10 years *393 imprisonment and a $25,000 fine. Thus, according to Chamblis, the court of appeals' remedy renders his guilty plea unknowing, unintelligent, and involuntary, thereby violating his right to due process by subjecting him to a greater sentence of imprisonment than that which he was told he could receive upon pleading guilty. He further contends that it would be fundamentally unfair to resentence him because he has already served the confinement portion of his originally imposed sentence.
¶ 42. The State argues that the court of appeals' remedy does not invalidate Chamblis's guilty plea. According to the State, the court of appeals correctly determined that Chamblis understood that he could be sentenced for a seventh offense upon pleading guilty. The State further submits that it would not be fundamentally unfair to resentence Chamblis consistent with a seventh offense because he knew the State would be appealing the circuit court's evidentiary ruling. Thus, the State maintains that Chamblis cannot reasonably claim an expectation of finality in his sentence.
¶ 43. We agree with Chamblis that the court of appeals' remedy in this case violates his right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary.
¶ 44. The record clearly establishes that Chamblis entered a knowing, intelligent, and voluntary guilty plea to the charge of operating with a PAC as a sixth offense, not as a seventh offense. Initially, there was confusion regarding the direct consequences of Chamblis's plea: it was unclear whether Chamblis was pleading guilty to a sixth offense — a Class H felony carrying a maximum punishment of 6 years imprisonment and a $10,000 fine — or a seventh offense — a *394 Class G felony carrying a maximum punishment of 10 years imprisonment and a $25,000 fine. However, the circuit court dispelled all confusion once it engaged Chamblis in the plea colloquy mandated by Wis. Stat. § 971.08.
¶ 45. At the outset of the plea colloquy, the circuit court clarified that it was proceeding with a plea to the charge of operating with a PAC as a sixth offense. It then asked Chamblis whether he understood the plea agreement. Chamblis responded "I do now, sir." The circuit court informed Chamblis that the plea carried a minimum penalty of 6 months imprisonment and a $600 fine and a maximum penalty of 6 years imprisonment and a $10,000 fine. Chamblis stated that he understood the penalty range and pleaded guilty.
¶ 46. Later in the plea colloquy, the circuit court ensured that Chamblis's plea was knowing, intelligent, and voluntary to the charge of operating with a PAC as a sixth offense:
THE COURT: Is there anything about your case that you don't understand at this point?
THE DEFENDANT: I didn't [understand] at first, but now, no, sir.
THE COURT: Okay. You feel like you fully understand everything?
THE DEFENDANT: Yes.
THE COURT: And it's been sort of a complicated matter. Do you feel you have a clear understanding of what these issues are?
THE DEFENDANT: Yes.
THE COURT: Okay. Do you understand the Court's not bound by any sentencing recommendation or any *395 other plea agreement or any arguments made by any of the attorneys at the time of sentencing? Do you understand that?
THE DEFENDANT: Yes, sir.
THE COURT: And in fact, upon your plea of guilty, the court may impose a maximum penalty in spite of any agreement?
THE DEFENDANT: Yes, sir.
Of course, the maximum penalty to which the circuit court referred and Chamblis understood was that associated with a sixth offense: 6 years imprisonment and a $10,000 fine. The plea colloquy therefore demonstrates that Chamblis entered a knowing, intelligent, and voluntary guilty plea to operating with a PAC as a sixth offense, not as a seventh offense.
¶ 47. However, as noted, we are not confined to the plea colloquy in evaluating Chamblis's due process challenge. Rather, we consider the totality of the circumstances in determining the knowing, intelligent, and voluntary nature of his plea. Bangert, 131 Wis. 2d at 258. That means we consider other portions of the record to determine if Chamblis understood that, as a direct consequence of his plea, he could be sentenced for a seventh offense.
¶ 48. The court of appeals found significance in the fact that defense counsel had stated on the record the minimum and maximum penalties associated with a conviction for operating with a PAC as a seventh offense. But these statements occurred prior to the circuit court's explicit determination that it would accept a plea only to the lower charge of a sixth offense. In fact, as we indicated above, the record clearly establishes that Chamblis did not understand the *396 direct consequences of his plea at the time in which these statements were made. That is precisely why we require the circuit court to personally engage the defendant in ascertaining the knowing, intelligent, and voluntary nature of a plea. See Brown, 293 Wis. 2d 594, ¶¶ 50-52. Given that the circuit court later informed Chamblis that the minimum and maximum penalties he faced were those commensurate with a sixth offense, it cannot reasonably be argued that defense counsel's statements demonstrate that Chamblis's plea was knowing, intelligent, and voluntary to a seventh offense.
¶ 49. The court of appeals also found it important that the "Plea Questionnaire/Waiver of Rights" form indicated a maximum punishment consistent with a seventh offense: 10 years imprisonment and a $25,000 fine. However, similar to defense counsel's statements, the "Plea Questionnaire/Waiver of Rights" form is of marginal value to the present issue. Chamblis executed the form a day before his plea hearing amid the uncertainty regarding the direct consequences of his plea.[13] We further note that the form did not list the minimum penalty corresponding to a seventh offense. This deficiency exemplifies why a plea questionnaire is not a substitute for the circuit court personally addressing the defendant to ensure that he or she understands the implications the plea. See id,., ¶ 52. Put simply, the "Plea Questionnaire/Waiver of Rights" form, executed prior to the plea colloquy in this case, does not establish that Chamblis's plea was knowing, intelligent, and voluntary to a seventh offense.
*397 | 50. Considering the totality of the circumstances, we conclude that Chamblis entered into a plea agreement with an understanding that the minimum penalty he could face was 6 months imprisonment and a $600 fine and the maximum penalty he could face was 6 years imprisonment and a $10,000 fine. That means Chamblis entered a knowing, intelligent, and voluntary guilty plea to operating with a PAC as a sixth offense, not as a seventh offense. Thus, the court of appeals' remedy which subjects Chamblis to a greater sentence of imprisonment than that which he was told he could receive upon pleading guilty violates his right to due process.
ii. The State's proposed remedy
| 51. In its brief and at oral argument, the State argued that even if the court of appeals' remedy violates Chamblis's right to due process, the proper remedy is to allow Chamblis to withdraw his guilty plea. Drawing on Bangert, 131 Wis. 2d at 283, the State maintains that plea withdrawal is the exclusive remedy for a defendant's plea being unknowing, unintelligent, and involuntary. While that may be true where a defendant appeals his or her conviction seeking plea withdrawal, that is hardly the situation we have here.
¶ 52. In Bangert, we set forth a burden-shifting procedure for circuit courts to follow when faced with a defendant's motion to withdraw his or her guilty or no contest plea on the basis that it was not knowing, intelligent, and voluntary. See Bangert, 131 Wis. 2d at 274-76. That procedure is not implicated in the instant action because Chamblis neither filed a motion to *398 withdraw his guilty plea nor appealed his conviction. Indeed, defense counsel made clear at oral argument that Chamblis does not wish to withdraw his guilty plea.
¶ 53. The State suggests that Chamblis should be required to withdraw his plea anyway. According to the State, Chamblis is not entitled to conviction and sentence for a sixth offense because the evidence shows that he already possessed six prior drunk-driving related convictions when he entered his guilty plea in this case.[14] Colloquially speaking, the State argues that Chamblis should not get a "free pass" on the circuit court's purported mistake.
¶ 54. We find it fundamentally unfair and thus violative of due process to require Chamblis to withdraw his guilty plea in this case.[15] "[T]he concern of due process is fundamental fairness." State ex rel. Lyons v. De Valk, 47 Wis. 2d 200, 205, 177 N.W.2d 106 (1970). " '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " Gilbert v. Homar, 520 U.S. 924, 930 (1997) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).
¶ 55. Here, we can think of at least a couple reasons that requiring Chamblis to withdraw his guilty plea is fundamentally unfair. First and fore *399 most, forced plea withdrawal deprives Chamblis of the benefit of his bargain. "A criminal defendant has a constitutional right to the enforcement of a negotiated plea agreement." State v. Smith, 207 Wis. 2d 258, 271, 558 N.W.2d 379 (1997)." 'Although a defendant has no right to call upon the prosecution to perform while the agreement is wholly executory, once the defendant has given up his bargaining chip by pleading guilty, due process requires that the defendant's expectations be fulfilled.'" Id. (citation omitted).
¶ 56. A substantial number of plea bargains are "no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury." Brady, 397 U.S. at 752. This case is no different. Chamblis entered into the plea agreement with the hope that he would face a less severe penalty than if he went to trial. As noted, the State agreed to dismiss charges of OWI as a repeater, obstructing an officer as a repeater, and battery by prisoner in exchange for Chamblis's plea and voluntary waiver of constitutional rights. Thus, a forced plea withdrawal in this case subjects Chamblis to greater punishment, not just with respect to the charge of operating with a PAC, but to these additional charges as well. That is fundamentally unfair, particularly in light of the fact that Chamblis has already served the 2 year confinement portion of his originally imposed sentence and therefore has an expectation of finality in that sentence.
¶ 57. Second, we note that the State was not without options to avoid this dilemma. For example, the State could have withdrawn its plea offer in response to the circuit court's determination that it would accept a plea only to the lower charge. In fact, *400 the circuit court went out of its way to give the prosecutor and defense counsel an opportunity to discuss whether the State wished to proceed with the plea given the evidentiary ruling. The State then could have sought review of the circuit court's decision by filing a petition for leave to appeal a non-final order pursuant to Wis. Stat. § 808.03(2).[16] However, the State chose to go through with the plea agreement anyway, despite the constitutional implications, perhaps because it too benefits from such a bargain. Id. ("For the State there are also advantages — the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof.").
¶ 58. For these reasons, we reject the State's contention that plea withdrawal is an appropriate remedy in this case.
*401 IV. CONCLUSION
¶ 59. We assume, without deciding, that the circuit court erred in excluding the additional evidence the State sought to submit to enhance Chamblis's punishment.
¶ 60. Although we assume error, we hold that the court of appeals' decision remanding the case to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense violates Chamblis's right to due process. Chamblis entered a knowing, intelligent, and voluntary guilty plea to operating with a PAC as a sixth offense, not as a seventh offense. Because a seventh offense carries a greater range of punishment than does a sixth offense, the court of appeals' remedy renders Chamblis's plea unknowing, unintelligent, and involuntary. We further conclude that a remedy which requires Chamblis to withdraw his guilty plea is fundamentally unfair and thus violative of due process under the facts of this case.
¶ 61. Accordingly, we reverse the decision of the court of appeals and uphold Chamblis's conviction.
By the Court. — The decision of the court of appeals is reversed.

 All references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

 La Crosse County, the Honorable Elliott M. Levine, presiding.

 State v. Chamblis, No. 2012AP2782-CR, unpublished order (Wis. Ct. App. May 29, 2014).

 On April 10, 2012, Chamblis was also charged with battery by prisoner contrary to Wis. Stat. § 940.20(1). The State filed that charge in a separate action in La Crosse County.

 Under Wis. Stat. § 346.65(2)(am), repeated violations of drunk-driving related offenses are subject to increasingly severe penalties. "This graduated penalty structure is nothing more than a penalty enhancer similar to a repeater statute which does not in any way alter the nature of the substantive offense, i.e., the prohibited conduct, but rather goes only to the question of punishment." State v. McAllister, 107 Wis. 2d 532, 535, 319 N.W.2d 865 (1982). The penalty range for operating with a PAC as a fifth or sixth offense is less severe than the penalty range for a seventh offense. See Wis. Stat. § 346.65(2)(am)5.-6.

 "The information is the accusatory pleading under our criminal system to which the defendant must plead and stand trial... ." Pillsbury v. State, 31 Wis. 2d 87, 93, 142 N.W.2d 187 (1966).

 As part of the plea agreement, the State agreed to dismiss the charges of OWI as a repeater, obstructing an officer as a repeater, and battery by prisoner (from the related case).

 Although Chamblis did not file his motion challenging the sufficiency of the evidence of the purported Illinois conviction until August 6, 2012, the transcript from the plea hearing indicates that defense counsel raised the issue with the State months earlier.

 The court of appeals also dismissed Chamblis's second argument that the remedy violated his constitutional right to be free from double jeopardy, reasoning that it was underdeveloped. We did not accept Chamblis's petition for review on that issue.

 Wisconsin Stat. § 343.307(1), entitled "Prior convictions, suspensions, or revocations to be counted as offenses," provides:
(1) The court shall count the following to determine the length of a revocation under s. 343.30(lq)(b) and to determine the penalty under ss. 114.09(2) and 346.65(2):
(a) Convictions for violations under s. 346.63(1), or a local ordinance in conformity with that section.
(b) Convictions for violations of a law of a federally recognized American Indian tribe or band in this state in conformity with s. 346.63(1).
(c) Convictions for violations under s. 346.63(2) or 940.25, or s. 940.09 where the offense involved the use of a vehicle.
(d) Convictions under the law of another jurisdiction that prohibits a person from refusing chemical testing or using a motor vehicle while intoxicated or under the influence of a controlled substance or controlled substance analog, or a combination thereof; with an excess or specified range of alcohol concentration; while under the influence of any drug to a degree that renders the person incapable of safely driving; or while having a detectable amount of a restricted controlled substance in his or her blood, as those or substantially similar terms are used in that jurisdiction's laws.
(e) Operating privilege suspensions or revocations under the law of another jurisdiction arising out of a refusal to submit to chemical testing.
(f) Revocations under s. 343.305(10).
(g) Convictions for violations under s. 114.09(l)(b)l. or lm.

 Wisconsin Stat. § 346.65(2)(am)6 provides that "any person violating s. 346.63(1)... is guilty of a Class G felony if the number of convictions under ss. 940.09(1) and 940.25 in the *390 person's lifetime, plus the total number of suspensions, revocations, and other convictions counted under s. 343.307(1), equals 7, 8, or 9 . . .."

 In apparent recognition of the constitutional problems created by its statutory construction, the State suggests that "any problem that result[s] from counting convictions after entry of a guilty plea could be easily remedied by a motion to withdraw the plea." But as discussed in section C(ii) below, a defendant may not wish to withdraw his or her guilty plea, and requiring the defendant to do so raises its own constitutional concerns.

 The "Plea Questionnaire/Waiver of Rights" form is dated September 18, 2012. Chamblis's plea hearing took place on September 19, 2012.

 Chamblis did not appeal the portion of the court of appeals' decision that concluded the State had sufficiently proved the prior Illinois conviction.

 In response to a question at oral argument, defense counsel maintained that Chamblis could not be required to withdraw his guilty plea without violating his constitutional right to be free from double jeopardy. We choose not to address that argument because it was not briefed by the parties.

 Wisconsin Stat. § 808.03(2) provides:
Appeals by permission. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:
(a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;
(b) Protect the petitioner from substantial or irreparable injury; or
(c) Clarify an issue of general importance in the administration of justice.