# COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 20, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1858-CR**

Cir. Ct. No. **2019CT733**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

TRAVIS D. HUSS,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Winnebago County: JOHN A. JORGENSEN, Judge. *Affirmed.*

¶1 KORNBLUM, J.[1] Travis D. Huss appeals from a judgment of conviction for operating while intoxicated (OWI), third offense, and operating with prohibited alcohol concentration (PAC), third offense.[2] He argues that we should reverse the conviction because the circuit court erred in refusing to allow Huss to present testimony that he requested a preliminary breath test (PBT) after he was arrested. We disagree and affirm.

## BACKGROUND

¶2 While on routine patrol on September 20, 2019, at about 1:00 a.m., City of Neenah Police Officer Paige Collins observed a vehicle make a right turn through a flashing red light without stopping. She performed a traffic stop on the vehicle. Huss was driving and was the sole occupant. Upon stopping Huss, Collins informed him why she was stopping him, and he "started laughing and begging [Collins] to write him a ticket so he could go to court." Huss said he wanted a ticket because "he has tons of conspiracy information on the MEG Unit and he wants to go to court so he can present that evidence." Collins testified that she could smell the odor of alcohol coming from Huss. His speech was slurred, he "was not making a lot of sense, and talking very rapidly." The video shows that Huss was talking continuously about conspiracies, how he was going to get blue on blue, and other similar sentiments. Collins stated multiple times that she did not understand him and had no idea what he was talking about. According to both Collins' testimony at trial and the body-cam video that the jury viewed, Collins

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] WISCONSIN STAT. § 346.63(1)(a) and (1)(b).

2

attempted to do a field sobriety test (horizontal gaze). Collins was not able to complete even one field sobriety test, because Huss was not cooperating with her instructions. Huss was talking over her, not following directions, and was not even looking at her finger, which was necessary to complete the test. After several attempts, Collins stopped attempting the test. At one point she yelled at him to cooperate. Huss just continued talking about conspiracies and stated, "This is part of a sting." Collins' assessment was that Huss was "messing" with her and just refusing to do the test. She arrested him. Collins testified that she did so because time is of the essence in suspected OWI cases, and she wanted to get him in for blood alcohol testing. Alcohol begins to metabolize within a certain time frame. So if she were to spend ten to twenty minutes messing around with an uncooperative suspect that would affect the strength of her case.

¶3 After arrest, Collins transported Huss to a local hospital. He arrived at 2:11 a.m. After Collins read him the "Informing the Accused" form, Huss consented to a blood draw. Forensic analysis revealed Huss' blood alcohol concentration (BAC) was .109.

¶4 The circuit court conducted a one-day jury trial on March 5, 2021. At trial, the State presented testimony from Collins, as well as the squad and body-cam video of the entire interchange between Collins and Huss, including the blood draw at the hospital but excluding the portion of the video where Huss requests a breathalyzer. The State also presented testimony from the phlebotomist who drew the blood and expert testimony from Aaron Zane, a chemist at the Wisconsin State Crime Laboratory. Huss testified in his own defense.

¶5 In his opening statement, Huss' attorney presented Huss' defenses as inadequate investigation and the "curve" defense—that based on the rate of

alcohol metabolism, the jury could conclude that Huss was not guilty of OWI at the time of arrest because his BAC was lower than the legal threshold of .08. Specifically, Huss' attorney told the jury that they would hear evidence that Huss had requested a PBT, and that

> [t]his is crucial evidence that Officer Collins decided she was not going to gather, either for herself or any possible jury down the road, to determine if, in fact, [Huss'] ability to operate a motor vehicle was impaired by an intoxicant. He asked more than once for a PBT, and she refused to provide it to him. She just took him off to the—arrested him, took him to the hospital, where ultimately, this blood draw was conducted.

¶6 At trial, however, the circuit court ruled that evidence regarding Huss' requests to take the PBT would not come into evidence due to its low relevance and its prejudicial value being "just too great."[3]

¶7 The jury found Huss guilty of both offenses.

¶8 Huss now argues that the circuit court erred in refusing to allow the evidence regarding his requests to take the PBT. He further argues that such error amounted to a violation of his constitutional Due Process right to present evidence. We disagree and affirm.

## DISCUSSION

*Standard of Review*

¶9 We review the circuit court's decision excluding testimony relating to Huss' request for a PBT under a deferential standard because a court's decision

---

[3] The matter was argued in an unrecorded sidebar, which was memorialized during a break in the trial.

4

"to admit evidence is within the circuit court's discretion." *See State v. Warbelton*, 2009 WI 6, ¶17, 315 Wis. 2d 253, 759 N.W.2d 557. We will only reverse the circuit court's decision if the court erroneously exercised its discretion. *State v. Gutierrez*, 2020 WI 52, ¶17, 391 Wis. 2d 799, 943 N.W.2d 870. The court properly exercised its discretion when it "examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion." *Gutierrez*, 391 Wis. 2d 799, ¶21 (quoting *State v. Chamblis*, 2015 WI 53, ¶20, 362 Wis. 2d 370, 864 N.W.2d 806). We consider only whether the court properly exercised its discretion, not whether we might have made a different decision. *State v. Echols*, 2013 WI App 58, ¶14, 348 Wis. 2d 81, 831 N.W.2d 768.

¶10 Even if we conclude that the circuit court properly exercised its discretion, we still consider whether the court's decision deprived a defendant of his or her right to present a defense. This is because whether a defendant was deprived of his or her right to present a defense is reviewed under a different standard as it is a question of constitutional fact, which is subject to independent appellate review. *State v. Williams*, 2002 WI 58, ¶69, 253 Wis. 2d 99, 644 N.W.2d 919.

*Circuit Court's Decision Denying Admissibility of Request for PBT*

¶11 Huss argues that the circuit court erred in denying evidence related to his offering to take the PBT. The trial transcript does not reflect any particular offer of proof showing when Huss made the request, or how many times, or what the officer's response was. The body-cam video shows that immediately after Collins arrested him, Huss began asking for a breathalyzer test, saying things like, "Where's my breathalyzer?" and "I want a breathalyzer." He did so multiple

5

times between the time he was arrested and the time he entered the squad. Collins responded the first time that she did not have to give him a breathalyzer and responded similarly at least one other time.

¶12    Huss recognizes that if he had taken a PBT, evidence of the results would have been inadmissible. WIS. STAT. § 343.303;[4] *State v. McPike*, 2009 WI App 166, ¶10, 322 Wis. 2d 561, 776 N.W.2d 617. He argues, however, that if a refusal to take a PBT can be admissible to show consciousness of guilt, "the

---

[4] WISCONSIN STAT. § 343.303 **Preliminary breath screening test.**

> If a law enforcement officer has probable cause to believe that the person is violating or has violated [WIS. STAT. §] 346.63(1) or (2m) or a local ordinance in conformity therewith, or [WIS. STAT. §§] 346.63(2) or (6) or 940.25 or 940.09 where the offense involved the use of a vehicle, or if the officer detects any presence of alcohol, a controlled substance, controlled substance analog or other drug, or a combination thereof, on a person driving or operating or on duty time with respect to a commercial motor vehicle or has reason to believe that the person is violating or has violated [§] 346.63(7) or a local ordinance in conformity therewith, the officer, prior to an arrest, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a device approved by the department for this purpose. The result of this preliminary breath screening test may be used by the law enforcement officer for the purpose of deciding whether or not the person shall be arrested for a violation of [§] 346.63(1), (2m), (5) or (7) or a local ordinance in conformity therewith, or [§§] 346.63(2) or (6), 940.09(1) or 940.25 and whether or not to require or request chemical tests as authorized under [WIS. STAT. §] 343.305(3). The result of the preliminary breath screening test shall not be admissible in any action or proceeding except to show probable cause for an arrest, if the arrest is challenged, or to prove that a chemical test was properly required or requested of a person under [§] 343.305(3). Following the screening test, additional tests may be required or requested of the driver under [§] 343.305(3). The general penalty provision under [WIS. STAT. §] 939.61(1) does not apply to a refusal to take a preliminary breath screening test.

corollary must also be true that a request for a breathalyzer is admissible on the theory that it demonstrates a consciousness of innocence."

¶13     Whether WIS. STAT. § 343.303 requires a court to admit the proffered testimony is a question of statutory interpretation. *See County of Jefferson v. Renz*, 231 Wis. 2d 293, 301, 603 N.W.2d 541 (1999). "Statutory interpretation is a question of law that we review *de novo*." *Id.* "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. We consider the plain and ordinary meaning of the language of the statute. *Id.*, ¶45. We have previously interpreted this statute narrowly as a bar on admission of PBT information in an OWI case. *McPike*, 322 Wis. 2d 561, ¶10. A plain reading of § 343.303 shows that the statute is silent as to admissibility of requests to take a PBT. Huss has not pointed to anything in the statute or case law requiring a court to admit his testimony, and we do not find that his assumption, that the mere request of a PBT demonstrates consciousness of innocence, requires such an interpretation.

¶14     Because we find no statutory requirement to admit Huss' testimony, we evaluate the circuit court's decision for an erroneous exercise of discretion. *See Gutierrez*, 391 Wis. 2d 799, ¶17. In this case, the court considered whether the relevance or probative value of the evidence pursuant to WIS. STAT. §§ 904.01[5]

---

[5] WISCONSIN STAT. § 904.01. **Definition of "relevant evidence"**. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

and 904.02,[6] outweighed the danger of unfair prejudice pursuant to WIS. STAT. § 904.03.[7] The court engaged in such an inquiry. The court articulated its assessment of the relevance of the evidence, stating that the evidence was only minimally probative, or in the court's words, "minorly relevant [sic]." The court stated that the evidence might have shown that Huss was able to pick and choose which evidence he would provide to law enforcement. However, when weighing the evidence against the prejudicial impact, § 904.03, the court found that the prejudicial impact of the evidence significantly outweighed its probative value. The court explained:

> And procedurally, it's not considered a field sobriety test. It's really a confirmation of the field sobriety test. And the officers aren't required to do that anyway. There's not even a law saying they have to do a field sobriety test and then if they find probable cause, they have to confirm it through a PBT test. And I just think it would confuse the jury about the officer's legal obligation, and its value in this trial would be minor compared to the confusion and the officer's belief or obligations to follow this procedure, and you know, which she's not required to do.

¶15 We find no erroneous exercise of discretion. The court considered the correct legal standard. The court correctly explained the law. The court reasonably assessed the danger of confusing the jury—because the law does not require officers to even offer any field sobriety tests or a PBT, the jury would need

---

[6] WISCONSIN STAT. § 904.02. **Relevant evidence generally admissible; irrelevant evidence inadmissible.** All relevant evidence is admissible, except as otherwise provided by the constitutions of the United States and the state of Wisconsin, by statute, by these rules, or by other rules adopted by the supreme court. Evidence which is not relevant is not admissible.

[7] WISCONSIN STAT. § 904.03. **Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

extensive education during the trial as to how to consider this evidence. The results of the PBT would have been inadmissible in any event. The jury would be left wondering what happened.

*Constitutional Right to Present a Defense*

¶16 Huss argues that the circuit court's refusal to allow evidence of his requests for a PBT not only was an erroneous exercise of discretion, but one that amounted to constitutional error because it denied him the right to present a defense.[8] *See Gutierrez*, 391 Wis. 2d 799, ¶16. Our supreme court has recognized that "the confrontation and compulsory process clauses of the Sixth Amendment of the U.S. Constitution and Article I, Section 7 of the Wisconsin Constitution 'grant defendants a constitutional right to present evidence.'" *State v. St. George*, 2002 WI 50, ¶14, 252 Wis. 2d 499, 512, 643 N.W.2d 777 (footnotes and citation omitted). The right to present a defense does not override considerations of admissibility of evidence. *Id.*, ¶15. A defendant does not have a constitutional right to present evidence where the danger of unfair prejudice substantially outweighs the probative value. *Id.* We still consider whether application of an evidentiary rule deprives a defendant of his right to present a defense. This is a question of constitutional fact that is subject to independent appellate review. *Williams*, 253 Wis. 2d 99, ¶69. Our supreme court has established a two-part test for determining whether the exclusion of evidence violates the right to present a defense. *Id.*, ¶70. The first part is whether "the proffered evidence was 'essential to' the defense." *Id.* (citation omitted). The second part is whether "without the

---

[8] Huss did not raise this issue at trial. However, both Huss and the State thoroughly briefed the issue, so we will consider it.

proffered evidence, the defendant had 'no reasonable means of defending his case.'" ***Id.*** (citation omitted).

¶17   Huss does not distinguish between these two parts of the test, and we consider them together.   Huss argued two defenses.   He challenged the thoroughness of law enforcement's investigation, and he challenged whether he actually had a BAC of .08 or more at the time of his arrest.   These two arguments are intertwined.   Huss argues that

> apart from the blood alcohol concentration, the only evidence that could suggest intoxication at the time of driving was a rolling stop, a Mr. Huss's drinking before driving and the "little" odor of alcohol, the irrational manner of speaking and the non-compliance with the request to perform one field sobriety test.

In addition, he argues that Collins rushed to judgment, and instead of arresting him and arguing with him, she should have recognized his severe mental illness and used de-escalation techniques to manage him, allowing him to complete the field sobriety tests.   Her rush to judgment resulted in Huss' loss of opportunity to prove that he was not intoxicated.

¶18   Neither of these arguments shows how admitting evidence that Huss had requested a PBT was essential to Huss' defense, or how failure to admit the evidence deprived him of the ability to present a defense.   Huss was able to present all of his arguments to the jury.   Not only was the jury able to hear both Collins and Huss testify, and make credibility determinations about them, but the jury also viewed the entire interaction between Huss and Collins on the body-cam video.   The jury could evaluate for itself both Collins' and Huss' behavior as it occurred at the time.   Huss' counsel was also able to make all the same arguments to the jury that counsel makes here:   that Huss did not "reek" of alcohol, that

Collins refused to do more field sobriety tests, and that Huss' lack of cooperation should not have excused Collins from completing the tests. Counsel highlighted what he viewed as the incompleteness of the investigation, arguing "[e]ight minutes into it, she is done with him. Losing composure, screaming at [Huss]." Counsel argued to the jury that Huss was not to the point of breaking the law:

> [t]here was no observed driving in this case indicative of an OWI .… During [Collins'] contact with him, she observed no glassy, bloodshot eyes …. No problem manipulating the wallet, no problem manipulating his driver's license outside of the wallet …. No problem walking back to her squad car to do the field sobriety tests. No staggering, no tipping, no nothing. He can walk fine.

We conclude that Huss was not denied his opportunity to present his defense relating to the quality of the investigation. The jury was able to evaluate the evidence of what happened during the encounter both by hearing testimony and the arguments of counsel and by watching the video.

¶19 Huss' second defense was the "curve" defense. He does not define the "curve" defense, but this court has described it previously as a defense based on extrapolating backward from the time of the blood alcohol test to the time of arrest to cast doubt upon whether the BAC at the time of the test was the BAC at the time of driving:

> a person goes through three stages of processing alcohol: absorption, plateau, and elimination. These stages can be represented on a graph as a curve with the alcohol content rising until it peaks and then falling as the body eliminates the alcohol. Thus, a person who is in the process of absorbing alcohol may be under the legal limit while driving but subsequently exceed the limit when a test is taken.

*State v. Brown*, No. 2016AP83-CR, unpublished slip op. ¶5 (WI App Dec. 14, 2016); *see also* WIS JI—CRIMINAL 234 (2004); *State v. Kothbauer*, No. 2020AP1406-CR, unpublished slip op. ¶38 (WI App. May 3, 2022).

¶20     Huss argues that his request for a PBT was essential to presenting his "curve" defense.  We disagree.  Huss was able to present the curve defense through the State's expert, Aaron Zane, who testified about the "curve" based on Huss' testimony.  Huss testified, in relevant part, about how much he drank preceding the stop.  He testified that he had been drinking since around 4:00 p.m. He consciously spaced out his drinks, going to multiple places, because he was driving.  "I usually try to calculate it because I just know, the general rule of thumb that one beer goes away in an hour."  The last place he stopped was a bar where they were having happy hour.  Although he had been drinking beer until that time, he had a shot when he first walked in "about 6:15, 6:45" p.m. that the bar offered for free with the free beer.  Huss testified that at midnight he decided to get a "Jack and Coke," and he believed a shot to go with it.  He "could have had" a shot too, "[s]omebody could have bought one.  That one is a little scattered…."  He testified that he finished the drink pretty quick.  Then around 12:45 a.m. or 12:40 a.m., he was hurrying to get to his brother's house.  He was pulled over after that.

¶21     Calculating how much Huss drank between 4:00 p.m. and the time he left the last bar, at the low end of Huss' testimony, he had eight beers, and a shot with "Jack and Coke" at the end of the night.  Using the facts from Huss' testimony about how much Huss drank and when he drank it, Zane testified about the curve defense and how quickly alcohol would have been absorbed.  Zane explained the curve and how it is calculated.  Zane calculated backward from the

time of the blood draw to the time of the stop, the BAC could have been anywhere between .077 and .087.

¶22 Both the State and defense counsel argued the curve defense to the jury, emphasizing different aspects of Huss' testimony and what assumptions were present about when Huss actually stopped drinking, and how much he had to drink. Based on the record, Huss was not denied his ability to present a defense, even without evidence that he had requested a PBT.

## CONCLUSION

¶23 In conclusion, we hold that the circuit court did not erroneously exercise discretion in excluding the evidence that Huss had requested a PBT, based on its determination that the danger of unfair prejudice outweighed the probative value of the evidence. We further hold that the evidentiary ruling did not unconstitutionally deprive Huss of his ability to present a defense. We affirm the circuit court's judgment.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.