ANNETTE KINGSLAND ZIEGLER, J.
¶ 97. (dissenting). I do not join the majority opinion because I would not allow defendant Timothy Finley ("Finley") to withdraw his plea of no contest, for three reasons. First, the two misstatements in this case as to the maximum penalty applicable to Finley's plea, taken together, do not constitute a Bangert violation. Second, even if a Bangert violation could be said to have occurred in this case, the circuit court's finding subsequent to the Bangert hearing that Finley knew the maximum applicable penalty is not clearly erroneous. Third, even if a Bangert violation could be said to have occurred in this case, and even if the circuit court's finding subsequent to the Bangert hearing that Finley knew the maximum applicable penalty is clearly erroneous, plea withdrawal should not be the only available remedy; Finley's sentence can be reduced to a 19.5-year term of imprisonment. As will be shown, the entirety of the record in this case demonstrates that Finley's motion is really based upon the fact that he *444 did not receive the sentence he hoped he would receive pursuant to his plea negotiations.[1]
I
¶ 98. Although the majority focuses on the two errors that occurred during the proceedings below, an understanding of the entire record is crucial to the correct disposition of this case. Thus, I provide certain additional facts.
¶ 99. On June 5, 2011, and according to the criminal complaint filed against him, Finley brutally beat K.A.G., an adult female with whom he lived, for a period of about five hours. The complaint alleges that Finley held a 10- to 12-inch butcher knife to K.A.G.'s throat, continuously struck her with a closed fist, and choked her until she lost consciousness. K.A.G. alleges that she sustained bruises, a broken nose, cuts to her hands from when she tried to pull the butcher knife away from her throat, cuts "all over [her] entire neck" and on her stomach, and a "deep" cut on her wrist that "was bleeding pretty bad" and that allowed her to "see some of the tendons in [her] arm." According to K.A.G., her medical treatment required, among other things, staples to her head.
¶ 100. On June 7, 2011, a criminal complaint was filed against Finley charging him with four offenses: (1) first-degree reckless endangerment, domestic abuse, use of a dangerous weapon, contrary to Wis. Stat. §§ 941.30(1), 968.075(l)(a), and 939.63(l)(b); (2) substantial battery, domestic abuse, *445 contrary to Wis. Stat. §§ 940.19(2) and 968.075(l)(a); (3) strangulation and suffocation, domestic abuse, contrary to Wis. Stat. §§ 940.235(1) and 968.075(l)(a); and (4) false imprisonment, domestic abuse, contrary to Wis. Stat. §§ 940.30 and 968.075(l)(a). The complaint stated in part that, upon conviction, Finley could be imprisoned: (1) up to 12.5 years for the reckless endangerment charge, which could be increased by up to 5 years because Finley committed the offense while using a dangerous weapon; (2) up to 3.5 years for the substantial battery charge; (3) up to 6 years for the strangulation and suffocation charge; and (4) up to 6 years for the false imprisonment charge.[2]
f 101. On June 27, 2011, an information was filed at the close of Finley's preliminary hearing. The State provided Finley's first attorney[3] with two copies. The attorney orally acknowledged receipt of the information.
¶ 102. The information repeated the charges listed in the complaint against Finley, but additionally charged Finley as a repeater under Wis. Stat. § 939.62(l)(c) as to the first-degree reckless endangerment count and under § 939.62(l)(b) as to the other three counts. The information stated in part that, upon *446 conviction, Finley could be imprisoned: (1) up to 12.5 years for the reckless endangerment charge, which could be increased by up to 5 years because Finley committed the offense while using a dangerous weapon, and up to an additional 6 years because Finley was a repeater; (2) up to 3.5 years for the substantial battery charge, which could be increased by up to 4 years because Finley was a repeater; (3) up to 6 years for the strangulation and suffocation charge, which could be increased by up to 4 years because Finley was a repeater; and (4) up to 6 years for the false imprisonment charge, which could be increased by up to 4 years because Finley was a repeater.
¶ 103. On August 1, 2011, Finley's arraignment was held. The following conversation took place:
THE COURT: Defendant appears in person with [his attorney]. So, we are here for arraignment on the felony?
[FINLEY'S FIRST ATTORNEY]: Yes, Your Honor.
THE COURT: Has your client received a copy of the information?
[FINLEY'S FIRST ATTORNEY]: We have received a copy of the information, four-count information. I have provided a copy to Mr. Finley. We discussed the nature of the charges and the maximum penalties. We waive a formal reading of the information ....
(Emphasis added.)
¶ 104. Plea negotiations ensued. On June 24, 2012, the day before Finley's plea hearing, and according to postconviction testimony from Finley's attorney,[4] Finley's attorney met with Finley for one to two hours and discussed a plea offer made by the State. *447 Finley chose not to accept the offer. He had been hoping to be found eligible by the court for the Earned Release and Challenge Incarceration programs, and accepting the State's offer would have made him ineligible for those programs. See generally Wis. Stat. §§ 973.01(3g)-(3m), 302.05(3), 302.045. Specifically, three out of the four crimes with which Finley was charged — substantial battery, strangulation and suffocation, and false imprisonment — are all crimes under chapter 940 of the Wisconsin Statutes, "Crimes Against Life and Bodily Security." See Wis. Stat. §§940.19(2), 940.235(1), 940.30. Those convicted of chapter 940 crimes are statutorily ineligible for the Earned Release and Challenge Incarceration programs. See § 973.01(3g)-(3m). Although the specifics of the State's offer are not in the record, Finley's attorney testified that the State asked for Finley to plead to charges that would have rendered him statutorily ineligible for these programs.
¶ 105. Finley and his attorney thus discussed a counter-offer, according to which Finley would plead to first-degree reckless endangerment. First-degree reckless endangerment is a crime under chapter 941 of the Wisconsin Statutes, "Crimes Against Public Health and Safety." See Wis. Stat. § 941.30(1). Although first-degree reckless endangerment is classified as a more serious crime than the other crimes with which Finley was charged, see Wis. Stat. §§ 940.19(2), 940.235(1), 940.30, 941.30(1), Finley and his attorney believed that pleading to a chapter 941 crime in exchange for dismissal of the other crimes left Finley statutorily eligible for the Earned Release and Challenge Incarceration programs. Finley's attorney testified as follows:
*448 Q: So, on that date, which was the eve before the plea hearing?
A: That is my recollection, yes.
Q: [Finley] indicated that he would be willing to plead to that first-degree recklessly endangering safety charge?
A: Yes.
Q: And that had enhancers, did it not?
A: Yes, it did.
Q: And was it also the proposal it would include the repeater and the dangerous weapon enhancers?
A: That was based on what [the State] was asking for, and I don't remember the specifics of that most recent offer. But I do remember that what he would have been pleading to, what I was going to take to [the State], had higher penalties than what [the State] was asking for, but it was only the one charge and it had the eligibility determination.
Q:. .. Ultimately [the State] accepted your proposal; is that correct?
A: Yes.
Q: And it, in fact, was to that one charge with both those enhancers, correct?
A: Yes.
Q: So, with your usual practice would you then explain the pitfalls of going back and specifically detail what the maximum exposure would have been?
A: Yes.
Q: Did you — would you have done that then prior, the day before prior to the plea hearing?
*449 A: We did. I remember we did discuss the fact that it would have been a higher penalty. So, I expect we did discuss that. Because I remember that was one of the specifics, that is what we were proposing had a higher maximum penalty.
Q: And in your usual practice would you ever have someone agree to plead to something where they were not aware of what the maximum exposure was?
A: No.
Q: So, that would have been something you would have covered with [Finley] so he knew, okay, you may become eligible, but now you are looking at this specific exposure; is that correct?
A: Yes.
Q: And on that date is there any reason to believe that you didn't give him the correct maximum exposure?
A: No.
Q: You did not do the plea form on that date; is that correct?
A: No. ...
Q: So, to the best of your knowledge, the day before [the plea hearing] when [Finley] was willing to plead to this charge with these enhancers, he was fully aware of the maximum potential penalties?
A: Yes.
Q: ... [T]he evening before [the plea hearing] [Finley] had already been told the correct amount, that would have been your practice?
A: That would have been my practice.
(Emphases added.)
*450 ¶ 106. Consequently, as of June 24, 2012 — the day before Finley's plea hearing — there is no evidence in the record to suggest that Finley had been misinformed or was otherwise unaware of the maximum applicable penalty for first-degree reckless endangerment, domestic abuse, use of a dangerous weapon, as a repeater. To the contrary: (1) Finley had received a copy of the information, which correctly stated the maximum applicable penalties; (2) Finley had reviewed the nature of the charges against him and maximum applicable penalties with his first attorney; (3) Finley had waived a formal reading of the information at his arraignment; and (4) Finley's attorney testified that, to the best of his knowledge, Finley was aware of the maximum applicable penalty relevant to his plea the day before his plea hearing.
¶ 107. On June 25, 2012, Finley's plea hearing was held. Two actions relevant to this case occurred prior to the hearing. First, Finley's attorney presented the State with Finley's counter-offer. Second, Finley's attorney and Finley filled out and reviewed Finley's Plea Questionnaire and Waiver of Rights form.
1 108. For the first time, and at most hours before his plea hearing, Finley was presented with an erroneous statement of the maximum applicable penalty. The plea form stated in part, "The plea agreement ... is as follows: Plea to count one as charged. State will dismiss and read in the remaining charges in 2011-CF-671 as well as the charges in 2011-CM-953. The State will cap its recommendation at 10 years initial confinement. We are free to argue." Unfortunately, the form also stated: "The maximum penalty I face upon conviction is 19 years, 6 months confinement . . . ." (Emphasis added.) This is incorrect. Upon conviction, Finley faced a total bifurcated sentence of *451 imprisonment of 23.5 years: 18.5 years of initial confinement and 5 years of extended supervision (12.5 years for the first-degree reckless endangerment charge, 5 years for the dangerous weapon enhancer, and 6 years for the repeater enhancer). See Wis. Stat. §§ 941.30(1) ("Recklessly endangering safety"), 939.50(3) ("Classification of felonies"), 939.63(l)(b) ("Penalties; use of a dangerous weapon"), 939.62(l)(c) ("Increased penalty for habitual criminality"), 973.01 ("Bifurcated sentence of imprisonment and extended supervision").[5] Finley's attorney testified that it would have been his practice to have proceeded line by line through the plea questionnaire with Finley and to have read the 19.5-year figure to him.
¶ 109. Importantly, however, Finley's attorney also testified as follows:
Q: So, the erroneous amount of nineteen and a half, that was first introduced after the defendant had already proposed [his] offer to the State on the day of the plea hearing?
A: Yes.
*452 (Emphasis added.)
¶ 110. At the plea hearing, the error on the plea questionnaire was repeated, but not until after the circuit court correctly discussed the maximum applicable penalty. The following exchange occurred:
THE COURT: The maximum penalty for the offense would be a fine of not more than $25,000 or imprisonment not more than twelve years and six months or both.
MR. FINLEY: Yes, sir.
THE COURT: Okay. I take it — are we pleading as a repeater?
[THE STATE]: Yes, Your Honor.
THE COURT: Okay. That will be the base penalty. Then because you are a repeater, then they could increase the incarceration period by not more than an additional six years. And they are basing the repeater enhancement provision on the fact that you were convicted of possession of cocaine as a subsequent offender, and possession of THC as a subsequent offender on September 12th, 2008, in Brown County. Do you remember those two felonies?
MR. FINLEY: Yes, sir.
THE COURT: Okay. And they are also charging that you used a dangerous weapon. And for the enhancement provision of using a dangerous weapon then the term of imprisonment can be increased by not more than five years for that. Do you understand that then?
MR FINLEY: Yeah.
THE COURT: All right. So the maximum you would look at then nineteen years six months confinement. Do you understand the maximum penalties?
*453 MR. FINLEY: Yes, sir.
THE COURT: Now, did — were you able to read the criminal complaint in the past or have the criminal complaint read to you in the past?
MR. FINLEY: Yeah.
(Emphasis added.)
¶ 111. Despite the fact that, on the date of his plea hearing, Finley was given information that conflicted with what he had been told prior to that date, the record does not contain evidence that Finley then informed either the court or his attorney that he was confused by the inconsistency.[6] In fact, the circuit court asked Finley, shortly after the exchange just provided:
THE COURT: Is there anything on the plea questionnaire form that you didn't understand that you'd like to ask your attorney questions or you would like to ask me questions about it?
MR. FINLEY: No, sir.
¶ 112. The circuit court accepted Finley's plea of no contest to first-degree reckless endangerment, domestic abuse, use of a dangerous weapon, as a repeater.
¶ 113. On August 22, 2012, an agent at the Department of Corrections prepared a presentence investigation report ("PSI") for Finley's sentencing. The "Recommendation" portion of the PSI, which appears on page 18 of that document, states in part:
*454 Mr. Finley is facing sentencing for 1st Degree Reckless Endangerment, Domestic Abuse, Use of a Dangerous Weapon, Repeater, with this offense being defined as a Class F felony with a maximum imprisonment term of 12.5 years and a maximum confinement term of 7.5 years coupled with a maximum extended supervision term of 5 years. Further invoking the provisions of 939.63(l)(b) because the defendant committed this offense while using a dangerous weapon the maximum term of imprisonment may be increased by not more than 5 years. Further invoking the provisions of 939.62(l)([c]) because the defendant is a repeater the maximum term of imprisonment may be increased by not more than 6 years. Based upon the risk to re-offend as well as the treatment needs it is therefore respectfully recommended that Mr. Finley be sentenced to 10 to 12 years confinement followed by 5 years extended supervision.
¶ 114. In a letter dated September 19, 2012, Finley's attorney informed the circuit court:
My client and I have had the opportunity to review the Pre-Sentence Investigation prepared by the Department of Corrections in this case. At this time we are requesting that the Sentencing Hearing... be adjourned. ... It appears as if some of the information presented in the PSI may be incorrect....
(Emphasis added.)
¶ 115. On September 21, 2012, the sentencing hearing was adjourned to October 19, 2012. On October 19, 2012, at sentencing, proceedings began with a discussion of some of the alleged errors in the PSI. Finley's attorney explained in part:
[FINLEY'S ATTORNEY]: I’ll just note on page 12 there is a statement by Mr. Finley's father. The first paragraph on page 12 where his father is claiming that *455 he broke [N.H.'s] jaw. There is nothing here to support that. My client denies that.
[FINLEY'S ATTORNEY]: The other thing I wanted to address is more of a legal issue would be on page 18 regarding the Challenge Incarceration and Earned Release. Agent says that [Finley is] not eligible because this is a Chapter 940 offense. My independent presentence writer made the same mistake. This is a Chapter 941 offense, so he is statutorily eligible for those programs.
(Emphasis added.) In other words, the record suggests that Finley and his attorney closely reviewed the PSI. In fact, they challenged information on the same page upon which appeared a detailed explanation of Finley's maximum exposure. They did not challenge the explanation of Finley's maximum exposure.
f 116. Eventually the circuit court sentenced Finley. The court was clearly disgusted by the "horrific" nature of the offense charged, observing that the injuries sustained by K.A.G. "show[ed] a total, utter disregard for human life." The court noted before pronouncing sentence:
I know that the Court of Appeals . . . looks disfa-vorably upon maximum sentences, and they really strictly review those sentences when judges impose them. But I've been here on the bench twenty-one years, and I've done criminal cases for most of those twenty-one years.. . . And I don't know what cases require the maximum if this one doesn't.
If you take time to go look at these photographs and understand clearly what this victim endured, I don't know if it takes thirty, forty, forty-nine, slits of the knife for someone to realize that this case is worth the maximum?
*456 ¶ 117. The court also reviewed Finley's decades-long criminal history, noting the "variety of significant and serious criminal convictions, many that show again [Finley's] disregard for other human beings."
¶ 118. When the court eventually sentenced Finley, it stated:
I am going to impose the maximum sentence in this case. I calculate that to be twenty-three point five years consisting of eighteen point five years of initial confinement and five years of extended supervision.
Moreover, the court informed Finley, "I can't think of any reason . . . that you should be entitled to Challenge Incarceration or [Earned] Release, therefore I'm going to deny both."
f 119. At no time during the sentencing hearing did Finley's attorney or Finley express any confusion as to the maximum applicable penalty as meted out by the court. Indeed, at the end of the hearing, the court verified:
THE COURT: . . . Anything the State didn't consider — or the Court didn't consider the State would like addressed ... ?
[THE STATE]: No, Your Honor.
THE COURT: [Finley's attorney]?
[FINLEY'S ATTORNEY]: No, Your Honor.
¶ 120. As the opinion of the court explains, on June 5, 2013, Finley filed a postconviction Bangert motion alleging that Finley's plea questionnaire misstated the applicable maximum penalty, that the circuit court repeated this error, and that Finley "did not know at the time of the plea hearing that the court could impose a total of 23.5 years, consisting of 18.5 *457 years of initial confinement and five years of extended supervision." See State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). Finley requested "that the court enter an order permitting Finley to withdraw his no contest plea; or alternatively, that the court modify the judgment of conviction to a maximum bifurcated sentence of 19.5 years, in keeping with the information Finley received at the plea hearing."
¶ 121. On July 19, 2013, a nonevidentiary hearing on Finley's motion was held. The State acknowledged the errors that had occurred but argued that Finley was nevertheless aware of the maximum applicable penalty and had not made a prima facie showing under Bangert. The State pointed in part to the criminal information that Finley had received, to representations on the record by Finley's attorneys[7] that they had reviewed with Finley the charges against Finley and the maximum penalty associated with those charges, and to the circuit court's piecemeal recitation to Finley of the maximum penalty for first-degree reckless endangerment and the additional penalties Finley faced when the dangerous weapon and repeater enhancers were added. The State argued that Finley was simply taking advantage of his attorney's mistake.
¶ 122. The postconviction court — the same court that had sentenced Finley and that had interacted with Finley in the courtroom — denied Finley's motion. The court concluded that Finley "knew fully well" the maximum applicable penalty at the time he entered his plea and that he had not made a prima facie Bangert showing. Finley appealed.
*458 ¶ 123. On March 18, 2014, the court of appeals determined that Finley had "established a Bangert violation as a matter of law" and remanded for an evidentiary hearing. State v. Finley, No. 2013AP1846-CR, unpublished slip op., ¶ 16 (Wis. Ct. App. Mar. 18, 2014).
¶ 124. On June 13, 2014, at the resultant hearing, the State called Finley's attorney to testify as to his interactions with Finley. Much of this testimony has already been recounted, including testimony of Finley's discussion with his attorney the night before Finley's plea hearing. The State noted that Finley made no objections at sentencing when the court pronounced sentence. For his part, Finley decided to withdraw his request for modification of his sentence; his attorney stated that Finley only wished to withdraw his plea. On October 8, 2014, in a written order, the court determined that the "State met its burden of establishing that Finley knew the maximum penalty he faced at the time he entered his plea." The court added that it was "satisfied based on the testimony of [Finley's attorney] that Finley actually knew the correct penalty at the time he offered to enter a plea." Nevertheless, the court reduced Finley's term of imprisonment to 19.5 years "in the interest of justice." Finley appealed.
¶ 125. On appeal, the State did not attempt to argue that it had met its burden at the Bangert evidentiary hearing. Instead, it argued that, because the circuit court had reduced Finley's sentence to what he had been told he could receive, no manifest injustice resulted and Finley was not entitled to withdraw his plea. On September 30, 2015, the court of appeals rejected the State's argument and concluded that, given the fact that the State did not attempt to argue *459 it had met its burden at the Bangert evidentiary hearing, Finley was entitled to withdraw his plea. State v. Finley, 2015 WI App 79, ¶¶ 36-37, 365 Wis. 2d 275, 872 N.W.2d 344. The State petitioned this court to review the decision of the court of appeals, and we granted that petition.
I — [ 1 — 1
¶ 126. "When a defendant seeks to withdraw a guilty plea after sentencing, he must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" State v. Taylor, 2013 WI 34, ¶ 24, 347 Wis. 2d 30, 829 N.W.2d 482 (citation omitted). Barring a defendant from withdrawing a plea that was not entered knowingly, intelligently and voluntarily would result in a manifest injustice. Id. (citation omitted).
¶ 127. This is so because " [u]nder the Due Process Clause of the Fourteenth Amendment to the United States Constitution, a defendant's guilty plea must be affirmatively shown to be knowing, voluntary, and intelligent." State v. Cross, 2010 WI 70, ¶ 16, 326 Wis. 2d 492, 786 N.W.2d 64 (citing State v. Brown, 2006 WI 100, ¶ 25, 293 Wis. 2d 594, 716 N.W.2d 906). "A plea not entered knowingly, intelligently, and voluntarily violates fundamental due process, and a defendant therefore may withdraw the plea as a matter of right." Taylor, 347 Wis. 2d 30, ¶ 25.
¶ 128. "The duties established in Wis. Stat. § 971.08, in Bangert, and in subsequent cases are designed to ensure that a defendant's plea is knowing, intelligent, and voluntary." Brown, 293 Wis. 2d 594, ¶ 23. Our case law thus dictates that, after sentencing, if a defendant "(1) make[s] a prima facie showing *460 of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege [s] that the defendant did not know or understand the information that should have been provided at the plea hearing," the defendant is entitled to a postconviction eviden-tiary hearing at which the State must "show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy." Id., ¶¶ 39-40 (citations omitted). If, at the hearing, the State fails to meet its burden, "the defendant is entitled to withdraw his plea as a matter of right." Cross, 326 Wis. 2d 492, ¶ 20. On the other hand, if the State meets its burden, then "withdrawal of the plea is left to the discretion of the circuit court and will not be disturbed unless the defendant demonstrates a manifest injustice will result from the court's refusal to allow the plea to be withdrawn." Id. (citation omitted).
¶ 129. Importantly, an "identified inadequacy" in a plea colloquy — a "Bangert violation," Cross, 326 Wis. 2d 492, ¶ 19 — is not itself a constitutional violation requiring plea withdrawal. See, e.g., Bangert, 131 Wis. 2d at 273 (" [A] trial judge's failure to personally ascertain a defendant's understanding of the nature of the charge at the plea hearing constitutes a violation of sec. 971.08, Stats., not a constitutional violation."); id. at 261 ("[S]ection 971.08 is not a constitutional imperative ...."); Cross, 326 Wis. 2d 492, ¶ 19 ("If the circuit court fails at one of [its] duties . . . the defendant may be entitled to withdraw his plea" (emphasis added) (citation omitted).). Instead, identification of an inadequacy, combined with the defendant's allegation that "the defendant did not know or understand the information that should have been provided at the plea *461 hearing," puts the court on notice that the defendant's plea may not have been entered knowingly, intelligently, and voluntarily — thus the need for an eviden-tiary hearing to resolve that question. See, e.g., id., ¶¶ 19-20 (citation omitted).
¶ 130. We must always keep in mind that, ultimately, our sometimes elaborate postconviction procedures are designed to ensure that defendants are afforded their constitutional rights. In further developing and refining the Bangert framework, this court should not countenance its mechanical application — to the detriment of the public — when it is apparent that the defendant's constitutional rights have not been violated. See id., ¶ 32 (" [Requiring an evidentiary hearing for every small deviation from the circuit court's duties during a plea colloquy is simply not necessary for the protection of a defendant's constitutional rights. The Bangert requirements exist as a framework to ensure that a defendant knowingly, voluntarily, and intelligently enters his plea. We do not embrace a formalistic application of the Bangert requirements that would result in the abjuring of a defendant's representations in open court for insubstantial defects."). " [I]f a defendant does understand the charge and the effects of his plea, he should not be permitted to game the system by taking advantage of judicial mistakes." Brown, 293 Wis. 2d 594, ¶ 37 (emphasis added).
¶ 131. The record in this case, taken as a whole, demonstrates what is really going on in this case: Finley is simply unhappy with the sentence he received. First, he thought he negotiated an outcome that would not approach the maximum potential penalty. Second, he thought he negotiated an outcome that would allow him to be found eligible for the Earned *462 Release and Challenge Incarceration programs. Unfortunately for Finley, the court exercised its discretion to impose the maximum sentence without eligibility for those programs.
f 132. Finley now seeks to escape the consequences of his plea, and seizes upon a pair of errors in the proceedings below to achieve this goal. Had the circuit court and counsel been more careful in determining the actual maximum penalty, this case would not even be pending on appeal. We do not conclude that such errors will always pass constitutional muster, but for the reasons that follow, the court errs in permitting Finley to withdraw his plea.
A. The Two Misstatements In This Case, Taken Together, Do Not Constitute A Bangert Violation.
¶ 133. As stated, a post-sentencing Bangert motion requires a defendant to "(1) make a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege that the defendant did not know or understand the information that should have been provided at the plea hearing." Brown, 293 Wis. 2d 594, ¶ 39 (citation omitted). Relevant to this case, Wis. Stat. § 971.08 states in part: "(1) Before the court accepts a plea of guilty or no contest, it shall do all of the following: (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted." Wis. Stat. § 971.08(l)(a) (emphasis added). Similarly, Bangert requires trial courts, before accepting pleas of guilty or no contest, "[t]o establish the accused's understanding of the nature of the crime with which he is *463 charged and the range of punishments which it carries." Bangert, 131 Wis. 2d at 262 (emphasis added).
f 134. Despite these general rules, we recently clarified in Cross that "not all small deviations from the requirements in our Bangert line of cases equate to a Bangert violation and require a formal evidentiary hearing." Cross, 326 Wis. 2d 492, ¶ 38. More specifically, we concluded that "a defendant's due process rights are not necessarily violated when he is incorrectly informed of the maximum potential imprisonment." Id., ¶ 37.
¶ 135. In Cross the defendant was told by his attorney, the State, and the circuit court that the maximum penalty applicable to the offense to which the defendant pleaded was higher than it actually was. Id., 1 1. We concluded that Cross was not entitled to withdraw his plea, even though we determined that Cross "pled guilty under the belief that he faced a higher. . . maximum penalty." Id., ¶ 5. We instead held:
[WJhere a defendant is told that he faces a maximum possible sentence that is higher, but not substantially higher, than that authorized by law, the circuit court has not violated the plea colloquy requirements outlined in Wis. Stat. § 971.08 and our Bangert line of cases. In other words, where a defendant pleads guilty with the understanding that he faces a higher, but not substantially higher, sentence than the law allows, the circuit court has still fulfilled its duty to inform the defendant of the range of punishments.
Id., ¶ 4. Put yet another way, we concluded that "a defendant can be said to understand the range of punishments as required by [Wis. Stat.] § 971.08 and Bangert when the maximum sentence communicated *464 to the defendant is higher, but not substantially higher, than the actual allowable sentence." Id., ¶ 38.
¶ 136. In Taylor, decided a few years later, we confronted what was in some ways the opposite situation as that which occurred in Cross: the circuit court in Taylor suggested to the defendant that the maximum penalty applicable to the offense to which the defendant pleaded was lower than it actually was, because the court failed to discuss fully a two-year repeater penalty enhancer. Taylor, 347 Wis. 2d 30, ¶¶ 1-2, 34. Although we acknowledged a statement in Cross that, unlike the situation in Cross, "when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk and a Bangert violation may be established," we nevertheless concluded that the circuit court did not err in denying the defendant's motion to withdraw his plea. Id., ¶¶ 8-9, 34. Specifically, we characterized the circuit court's omission as an "insubstantial defect," concluding that a "defendant's plea [is] entered knowingly, intelligently, and voluntarily when the record makes clear that the defendant knew the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received." Id., ¶ 8. We noted that the record in that case was "replete with evidence" that the defendant was aware of the maximum applicable penalty. Id., ¶ 35.
¶ 137. Cross and Taylor demonstrate that the nature and effect of an alleged error and what the record demonstrates about a defendant's understanding of any omitted information are factors relevant to a court's consideration of a Bangert motion. This stands to reason, as the Bangert procedures are designed to ensure than an error does not result in an unknowing, *465 unintelligent, or involuntary plea. See, e.g., Taylor, 347 Wis. 2d 30, ¶ 30. An evidentiary hearing is often needed in order to resolve allegations that a plea was entered unknowingly, unintelligently, or involuntarily, but not always. "Courts must not be rendered powerless to reject a conclusory allegation — 'I didn't know'— that is disproven by the existing record." Id., f 82 (Prosser, J., concurring). Put differently, if it is obvious from a record that a defendant's plea was entered knowingly, intelligently, and voluntarily, an eviden-tiary hearing should not be required to determine whether a plea was entered knowingly, intelligently, and voluntarily. See id., ¶¶ 34, 39, 42.
¶ 138. The record in the current case establishes that no Bangert violation occurred below.[8] The two misstatements in this case amount to an "insubstantial defect" given the enormous amount of evidence in the record indicating that Finley was fully aware of the maximum applicable plea.
¶ 139. First, Finley received a copy of the information, which correctly stated the maximum applicable penalties. Second, Finley reviewed the information, including maximum penalties, with his first attorney, a fact the attorney confirmed in court with no objection from Finley. Third, Finley's attorney waived a formal reading of the information at Finley's arraignment, again with no objection from Finley. Fourth, the circuit court below correctly stated the maximum applicable penalty for the offense to which Finley pleaded no contest, correctly stated the maximum additional *466 exposure because of the dangerous weapon penalty enhancer, and correctly stated the maximum additional exposure because of the repeater penalty enhancer. Fifth, after Finley's plea was entered, Finley and his attorney received a PSI that correctly stated the maximum applicable penalty, and Finley's attorney represented to the circuit court in a letter that he and Finley had had an opportunity to review the PSI. In fact, the transcript of the sentencing hearing suggests that Finley and his attorney reviewed the PSI quite closely, including the specific page upon which the correct maximum penalty appeared. Yet, although Finley and his attorney challenged specific portions of the PSI, they never raised any concerns about the statement of the maximum applicable penalty as stated on the PSI. Finally, neither Finley nor his attorney objected when the circuit court announced the incorrect maximum applicable penalty at the plea hearing. Nor did they do so when the circuit court pronounced sentence and announced the correct maximum applicable penalty.
¶ 140. Given this evidence, Finley's claim that he "did not know" the maximum applicable penalty in light of one erroneous statement on the plea questionnaire and one erroneous statement by the circuit court below is simply not believable. In light of the many different times that Finley was correctly informed of the maximum potential penalty — before, during, and after he entered his plea — with no protestation from Finley, the error that occurred in this case
is, on review of this record, an "insubstantial defect" such that an evidentiary hearing is not required to determine if [Finley] entered his plea knowingly, intelligently, and voluntarily. A Bangert violation occurs, and a hearing is required, when the plea is not entered *467 knowingly, intelligently, and voluntarily. No such hearing is required here because this record reflects that [Finley] indeed pled knowingly, intelligently, and voluntarily.
Taylor, 347 Wis. 2d 30, ¶ 39. Simply put, " [a] court is not obligated to accept a defendant's statement if the record demonstrates that the statement is not credible." Id., ¶ 83 (Prosser, J., concurring). Cf. State v. Howell, 2007 WI 75, ¶¶ 75-77, 301 Wis. 2d 350, 734 N.W.2d 48.
¶ 141. Thus, as the State originally argued before the circuit court below, and as the circuit court correctly determined, no Bangert violation occurred in this case. The record demonstrates that Finley's plea was made knowingly, intelligently, and voluntarily. Because no Bangert violation occurred, the circuit court was not required to grant Finley an evidentiary hearing on his postconviction motion and had discretion to grant or deny Finley's motion for plea withdrawal, assuming that Finley could not otherwise establish a manifest injustice (and Finley has not argued that he can). See Cross, 32 Wis. 2d 492, ¶¶ 4, 41-44; Taylor, 347 Wis. 2d 30, ¶¶ 34-35, 39, 50 n.18.
B. The Circuit Court's Finding That Finley Knew The Maximum Penalty Applicable To His Plea Is Not Clearly Erroneous.
¶ 142. Despite the foregoing, Finley was in fact granted an postconviction evidentiary hearing, at which the State bore the burden of showing "by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered, despite the inadequacy of the record at the time of the plea's acceptance." Bangert, 131 Wis. 2d at 274 (cita *468 tion omitted). At the hearing, the State called Finley's defense counsel as a witness and questioned him about his meeting with Finley the day before the plea hearing. The State also noted the lack of objection from Finley at sentencing when the circuit court sentenced him.
¶ 143. The circuit court concluded in its written order that the State had met its burden of showing that Finley knew the maximum penalty he faced at the time he entered his plea. The court was "satisfied based on the testimony of [Finley's attorney] that Finley actually knew the correct penalty at the time he offered to enter a plea." It denied Finley's motion to withdraw his plea.
f 144. "Whether a plea was entered knowingly, intelligently, and voluntarily is a question of constitutional fact that is reviewed independently. 'In making this determination, this court accepts the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous.' " Taylor, 347 Wis. 2d 30, ¶ 25 (citation omitted).
¶ 145. The court's finding that Finley knew the maximum penalty he faced at the time he entered his plea is not clearly erroneous. The evidence in the record supporting this finding, now including additional evidence provided by the testimony of Finley's attorney — the fact that Finley was given a copy of the information; the representation by Finley's attorney in court that he had given Finley a copy of the information and had reviewed with Finley the nature of the charges against him and the maximum applicable penalties; Finley's waiver of a formal reading of the information; testimony from Finley's own attorney that, to the best of the attorney's knowledge, Finley was aware of the maximum applicable penalties the *469 day before his plea hearing; the fact that the plea agreement eventually reached between Finley and the State stemmed from an offer made by Finley and his own attorney, an offer made before the plea questionnaire form was completed; the correct piecemeal explanation of the maximum applicable penalty at Finley's plea hearing; Finley's failure to object at the plea hearing when the incorrect maximum applicable penalty was provided; the correct statement of the maximum applicable penalty on Finley's PSI; Finley's failure to object to that statement despite his other PSI-related objections; and Finley's failure to object at sentencing to the sentence he was given by the circuit court — is overwhelming. See, e.g., State v. Denson, 2011 WI 70, ¶ 73, 335 Wis. 2d 681, 799 N.W.2d 831; State v. Hoppe, 2009 WI 41, ¶ 50, 317 Wis. 2d 161, 765 N.W.2d 794.
¶ 146. As if this were not enough, the record demonstrates a history of deceitful behavior on the part of Finley. Early on in the case, Finley's competency was examined by Dr. Richard Hurlbut and by Dr. James Armentrout. Although Dr. Hurlbut concluded "to a reasonable degree of professional certainty that [Finley] . . . lack[ed] the substantial mental capacity to understand the proceedings and assist in his own defense," Dr. Armentrout concluded "to a reasonable degree of professional certainty" that Finley was "malingering cognitive disability in an attempt to evade legal accountability for his charged offenses," and that Finley did not "lack competency to proceed in court." Dr. Armentrout later testified,
Malingering refers to the intentional production or exaggeration of symptoms of either physical or psychological problems with the motivation to gain something the person wants to gain.. . . And in this case *470 certainly I thought Mr. Finley was doing that because he hoped to evade accountability for the charges that had been made against him.
The circuit court eventually stated that it accepted the testimony of Dr. Armentrout and made a finding that Finley was competent to proceed. At sentencing, the State reminded the circuit court of the "incompetency sort of fiasco that we all went through."
f 147. Finally, at sentencing, the circuit court noted Finley's "twenty to thirty aliases" and concluded that these aliases indicated Finley was "willing to change [his] name to try to avoid responsibility." It also noted Finley's " criminal record that goes back into the mid-1990's."
¶ 148. These additional facts about Finley's character, combined with the other evidence in the record already discussed, establish that it was entirely reasonable for the circuit court, which had spent extensive time with Finley, to have concluded that Finley was not telling the truth about what he knew at the time of his plea hearing.[9] Again, the circuit court's determination is entitled to deference. See, e.g., Moonen v. Moonen, 39 Wis. 2d 640, 646, 159 N.W.2d 720 (1968) ("The trial court is in better position than the supreme court to make a judgment concerning credibility and *471 a judgment so made should not be disturbed."); Onalaska Elec. Heating, Inc. v. Schaller, 94 Wis. 2d 493, 501, 288 N.W.2d 829 (1980) ("It is well established that when the trial judge acts as the finder of fact, he is the ultimate arbiter of the credibility of the witnesses when there is a conflict in the testimony, and his findings will be sustained unless they are against the great weight and clear preponderance of the evidence. Also when more than one reasonable inference can be drawn from the evidence, this court is obliged to support the finding made by the trial court."); Trible v. Tower Ins. Co., 43 Wis. 2d 172, 180, 168 N.W.2d 148 (1969) ("The trial court obviously believed the testimony of the plaintiff. It was his function to determine the credibility of the witnesses.").
¶ 149. In sum, although Finley was not entitled to an evidentiary hearing, he was granted one. The circuit court determined subsequent to that hearing that Finley actually knew the correct penalty at the time he offered to enter a plea. This finding was not clearly erroneous, and should not be upset.[10] Given this finding, there is no basis for concluding that Finley's plea was anything but knowing, intelligent, and voluntary.
*472 C. Plea Withdrawal Is Not The Only Available Remedy In This Case.
¶ 150. Finally, even if this court were to discard the record in this case and accept that Finley did not know the maximum applicable penalty at the time he entered his plea, plea withdrawal is not the only available remedy in this case. Specifically, the circuit court's decision to reduce Finley's term of imprisonment to the amount he was told he could receive, 19.5 years, remedied any error that had occurred.[11] A number of propositions, considered together, explain why a sentence-reduction remedy best fits the alleged wrong that occurred in this case.
¶ 151. First, the "high standard" that must be met by defendants wishing to withdraw pleas after sentencing — proof by clear and convincing evidence that refusal to allow withdrawal would result in a manifest injustice — stems from the State's interest in the finality of convictions. State v. Black, 2001 WI 31, ¶ 9, 242 Wis. 2d 126, 624 N.W.2d 363 (citations omitted). In other words, we do not uproot convictions without adequate reason. If there is a means of correcting errors below without disturbing a settled conviction and without violating the constitutional rights of the defendant, this court should not hesitate to use *473 it. As is said in the broader context of the manifest injustice test, the question is "not. . . whether the circuit court should have accepted the plea in the first instance, but rather . . . whether the defendant should be permitted to withdraw the plea." State v. Cain, 2012 WI 68, ¶ 30, 342 Wis. 2d 1, 816 N.W.2d 177.
¶ 152. Second, although Bangert made clear that " [w]hen a defendant establishes a denial of a relevant constitutional right, withdrawal of the plea is a matter of right," Bangert, 131 Wis. 2d at 283 (emphasis added), we also explained in Cross that "the great weight of authorities from other state and federal courts reject the notion that the failure to understand the precise maximum punishment is a per se due process violation." Cross, 326 Wis. 2d 492, ¶ 33. Likewise, Bangert stated that, although a violation of Wis. Stat. § 971.08 "may have constitutional ramifications," such a violation is " itself not constitutionally significant." Bangert, 131 Wis. 2d at 261 n.3 (emphasis added).
¶ 153. There is a principle present in both Cross and Taylor — namely, that incorrect or insufficient knowledge about an aspect of a plea does not necessarily invalidate the entire plea — that this court should apply here. In Cross, for instance, in explaining that a "defendant who has been told a maximum punishment higher, but not substantially higher, than that authorized by law, has not necessarily made a prima facie case that the requirements of [Wis. Stat.] § 971.08 and our case law have been violated," we reasoned that "a defendant who believes he is subject to a greater punishment is obviously aware that he may receive the lesser punishment. Thus, [a] defendant. . . who was told he faced 19 years, six months maximum exposure, was certainly aware that he faced 16 years imprison *474 ment." Cross, 326 Wis. 2d 492, ¶¶ 30-31. And in Taylor where, again, the defendant was verbally informed of the maximum applicable penalty for the charge of uttering forgery, but not of the additional two-year repeater penalty, we stated:
We reject [the defendant's] argument — that because he was not specifically, verbally advised by the circuit court at the plea hearing of the potential, additional two-year term of imprisonment from the alleged repeater, his entire plea is not knowing, intelligent, and voluntary — because he did in fact plead knowingly, intelligently, and voluntarily to the underlying crime of uttering a forgery. At the plea hearing, the court did verbally inform [the defendant] that he faced a maximum term of imprisonment of six years for the underlying charge of uttering a forgery.
Taylor, 347 Wis. 2d 30, ¶ 45.
¶ 154. Finally, "[t]he concern of due process is fundamental fairness. '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " State v. Chamblis, 2015 WI 53, ¶ 54, 362 Wis. 2d 370, 864 N.W.2d 806. The "arid logic" of the majority opinion, see North Carolina v. Alford, 400 U.S. 25, 39 (1970) — the formulaic assessment that two misstatements in the record, plus Finley's allegation that he did know the omitted information, plus a lack of argument from the State on appeal that Finley knew the omitted information, equals automatic plea withdrawal — is inconsistent with these maxims.
¶ 155. In summary, three propositions are relevant here: (1) we do not permit withdrawal of plea without adequate reason; (2) failure of a defendant to understand the precise maximum punishment is not a per se due process violation, and incorrect or insuffi *475 cient knowledge about an aspect of a plea does not necessarily invalidate the entire plea; and (3) due process is flexible and calls for such procedural protections as the particular situation demands. These propositions suggest the appropriate remedy: reduce Finley's sentence to that which he alleges he knew he could receive, a 19.5-year term of imprisonment. "In order to prevent the continuation of unjust sentences, the circuit court has inherent authority to modify a sentence." State v. Ninham, 2011 WI 33, ¶ 88, 333 Wis. 2d 335, 797 N.W.2d 451. And reduction cures any "manifest injustice" — Finley does not receive a sentence lengthier than he was informed he could receive and which he believed he could receive at the time he entered his plea. Finley can then be said to have had an "understanding of. . . the potential punishment if convicted" at the time he entered his plea. Wis. Stat. § 971.08(l)(a).
¶ 156. The propriety of this solution is confirmed by the fact that this precise remedy has been used by this court in the past. In Preston v. State, the defendant was erroneously informed by the circuit court that he could receive a maximum sentence of 20 years on an attempted murder charge; the defendant eventually received a sentence of 25 years. Preston v. State, 58 Wis. 2d 728, 729, 206 N.W.2d 619 (1973) (per curiam). We stated:
Under the circumstances of this case, this error reaches constitutional proportions .... [S]ince the defendant was informed prior to his plea that he could receive a maximum sentence of only [20] years on the attempted murder charge, fundamental fairness requires that he not receive a greater sentence on that charge.
*476 The sentence imposed on the attempted murder charge is hereby reduced from [25] years to [20].
Id. at 729-30 (citation omitted). In Garski v. State, 75 Wis. 2d 62, 248 N.W.2d 425 (1977), we discussed the requirement "that the defendant be informed of the full range of statutorily authorized penalties for commission of the crime charged, particularly the maximum sentence possible," Garski, 75 Wis. 2d at 76 (citation omitted), and cited Preston for the proposition that "where a trial court misinforms the defendant as to the maximum penalty in accepting a guilty plea, the court cannot then impose a greater sentence than that of which he was informed." Id. (citation omitted).
¶ 157. We also explained that the statement above regarding the requirement that a defendant be provided with information about the "maximum sentence possible" derived from an interpretation of the standard set forth in State v. Reppin, 35 Wis. 2d 377, 385 n.2, 151 N.W.2d 9 (1967) (which was in turn taken from a list of standards promulgated by the American Bar Association) that "a defendant might be permitted to withdraw his plea of guilty if he is able to prove by clear and convincing evidence that his plea was made under the following circumstances: '(3) the plea. . . was entered without knowledge . . . that the sentence actually imposed could be imposed.' " Garski, 75 Wis. 2d at 75-76 (emphasis added) (citation omitted). The phrasing of this standard is notable for present purposes, because if a defendant's sentence is reduced to that which he believed he could receive, then his plea is no longer one "entered without knowledge . . . that the sentence actually imposed could be imposed."
*477 ¶ 158. Our plea withdrawal procedures may have changed since Preston and Garski, but the constitutional guarantee of due process has not. This court should use the remedy set forth in Preston in this case.
f 159. Further, reducing Finley's sentence to what he was told he could receive is perfectly consistent with the logic of Taylor: a "defendant's plea [is] entered knowingly, intelligently, and voluntarily when the record makes clear that the defendant knew the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received." Taylor, 347 Wis. 2d 30, ¶ 8. If Finley's sentence is reduced, then he both knew the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received.
¶ 160. Finally, a sentence-reduction remedy finds analogy in this court's decision last year in Chamblis. In that case, we assumed without deciding that a circuit court had erred in excluding evidence that might have changed the charge faced by the defendant from operating with a prohibited alcohol concentration ("PAC") as a sixth offense to operating with a PAC as a seventh offense and that might have enhanced the applicable penalty from a maximum of 6 years imprisonment to a maximum of 10 years imprisonment. Chamblis, 362 Wis. 2d 370, ¶¶ 1-5. Nevertheless, we concluded that the court of appeals' proposed remedy — "remanding the case to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense"— violated the defendant's right to due process. Id., ¶¶ 6, 40. The defendant "entered a knowing, intelligent, and voluntary guilty plea to operating with a PAC as a *478 sixth offense, not as a seventh offense," we explained, and "[b]ecause a seventh offense carries a greater range of punishment than does a sixth offense, the court of appeals' remedy renders [the defendant's] plea unknowing, unintelligent, and involuntary." Id., ¶ 6. In effect, we recognized that although the defendant should have faced a maximum of 10 years, rather than 6 years, we would allow the defendant to keep his 6-year-maximum plea because that was the maximum he believed he could receive. The corollary of this holding is that where, as here, the defendant should have faced a maximum of 23.5 years imprisonment, rather than 19.5 years, we can allow the defendant to "keep" the 19.5-year-maximum sentence he was informed he might receive by reducing the sentence to that amount.
¶ 161. The State's proposed remedy in this case also comports with precedent outside of Wisconsin. See, e.g., United States v. Perez-Carrera, 243 F.3d 42, 42-44 (1st Cir. 2001) (defendant who was misinformed that a count carried a mandatory 5-year penalty rather than a mandatory 10-year penalty and who was sentenced was not entitled to withdraw his plea; the district court was instructed, on remand, to modify the sentence imposed by reducing the incarcerative term to 5 years); Moore v. United States, 592 F.2d 753, 754-56 (4th Cir. 1979) (defendant who claimed he understood maximum penalty for offense to be 15 years and who was sentenced to 15 years imprisonment plus a 3-year special parole term not entitled to withdraw plea; court remanded to district court to allow it, in its discretion, to either reduce the prison sentence to 12 years such that "the combined sentence of prison and parole will correspond to what [the defendant] claims he understood to be the maximum *479 penalty," or to allow the defendant to "set aside the plea and allow [the defendant] to plead again.").
¶ 162. Plea agreements are often referred to as plea "bargains." E.g., Chamblis, 362 Wis. 2d 370, ¶ 56. If Finley indeed was unaware of the maximum applicable penalty, he should not be deprived of the "benefit of his bargain" — he is entitled to some kind of remedy. Id,., ¶ 55. But that does not mean that Finley is entitled to plea withdrawal.
¶ 163. Finley alleges he pleaded no contest with the understanding that he would not be sentenced to more than a 19.5-year term of imprisonment. He was sentenced to a 23.5-year term of imprisonment. Assuming that Finley actually did not know the maximum applicable penalty, I would affirm the circuit court's decision to reduce Finley's sentence to a 19.5-year term of imprisonment, which eliminates any "manifest injustice" that might result in refusing to allow Finley to withdraw his plea. I do not join the majority, which concludes that plea withdrawal is the only appropriate remedy, and which therefore " embrace [s] a formalistic application of the Bangert requirements" without proper regard for what the Constitution actually requires in this scenario. Cross, 326 Wis. 2d 492, ¶ 32.
¶ 164. The majority's decision to allow Finley to withdraw his plea is particularly tragic given the circumstances of this case. In a letter to the circuit court prior to sentencing, KA.G.'s father wrote, " [Pjlease help [K.A.G.] and our family heal by issuing the maximum penalty allowed by law. ... I cannot describe to you how this would help my daughter. It would give all of us faith in the justice system . . . ."
H — i i — I ( — H
*480 ¶ 165. Further, the circuit court below considered the need to protect the public "the most significant factor in this case." The court told Finley:
I believe your next victim will not survive. ...
[T]he fact that you keep endearing yourself to these women who then will allow you to father their children and you go from one to one to the next to the other, and you've got this history of violence and being abusive to them. . . tells me that you're going to find another woman. ...
And my fear is your next victim will not survive. . . .
I cannot impose a sentence on you that allows you to get back on the streets and have another victim.
¶ 166. Perhaps it goes without saying, but it has now been five years since the complaint in this case was filed. Quite obviously, the decision of the court— that Finley is allowed to start over — may very well raise significant issues as to whether this case can even be tried. Concluding that this is a constitutional violation and that plea withdrawal is the remedy may have profound impact on the viability of the case. The reality, however, highlights the need for courts and counsel to get it right.
¶ 167. I do not join the majority opinion because I would not allow Finley to withdraw his plea of no contest, for three reasons. First, the two misstatements in this case as to the maximum penalty applicable to Finley's plea, taken together, do not constitute a Bangert violation. Second, even if a Bangert violation could be said to have occurred in this case, the circuit court's finding subsequent to the Bangert hearing that Finley knew the maximum applicable penalty is not clearly erroneous. Third, even if a Bangert violation *481 could be said to have occurred in this case, and even if the circuit court's finding subsequent to the Bangert hearing that Finley knew the maximum applicable penalty is clearly erroneous, plea withdrawal should not be the only available remedy; Finley's sentence can be reduced to a 19.5-year term of imprisonment. The entirety of the record in this case demonstrates that Finley's motion is really based upon the fact that he did not receive the sentence he hoped he would receive pursuant to his plea negotiations.
f 168. For the foregoing reasons, I respectfully dissent.

 Additionally, the court's opinion should not be read as deciding any more than is necessary to resolve this case properly, and its purported need to define numerous terms raises -unnecessary questions.

 I do not mention any applicable fines in this separate writing.

 In order to differentiate this attorney from the attorney who represented Finley during plea negotiations, the plea hearing, and the sentencing hearing, this attorney will be referred to as Finley's "first attorney." The attorney who represented Finley during plea negotiations, the plea hearing, and the sentencing hearing will be referred to simply as Finley's attorney. The record suggests that Finley was briefly represented by a third attorney during the earliest of the proceedings below, but that attorney will not be referenced.

 See supra, n.3.

 Finley's attorney could not determine, in retrospect, the origin of the erroneous 19.5-year figure. One possibility comes to mind, however. As stated, Finley faced a term of imprisonment of up to 12.5 years for the reckless endangerment charge and up to 5 years for the use of a dangerous weapon enhancer; these numbers add to 17.5 years. The habitual criminality statute provides enhancements of 2, 4, or 6 years depending on the applicable maximum term of imprisonment and on whether the prior convictions were for misdemeanors or felonies. See Wis. Stat. § 939.62(1). If Finley's attorney incorrectly applied the repeater enhancer from Wis. Stat. § 939.62(l)(a) rather than from § 939.62(l)(c), he would have added 2 years to Finley's term of imprisonment rather than 6. This would result in an erroneous maximum term of imprisonment of 19.5 years.

 Finley's attorney testified that Finley said "something" to him when the court advised him of the maximum applicable penalty, but Finley's attorney could not recall what Finley had said.

 The State was likely referring to the statement at Finley's arraignment. It is unclear to which other representations the State was referring, given that Finley's attorney had not yet presented any postconviction testimony.

 For purposes of this section of my analysis, I do not rely on testimonial evidence in the record provided by Finley's attorney at the postconviction hearing, because without a finding of a Bangert violation this hearing would not have occurred.

 Finley claimed, he did not know the applicable maximum penalty at the time he entered his plea. The court found that he did, and thus implicitly found Finley's claim not credible. See State v. Echols, 175 Wis. 2d 653, 673, 499 N.W.2d 631 (1993) ("Where it is clear under applicable law that the trial court would have granted the relief sought by the defendant had it believed the defendant's testimony, its failure to grant the relief is tantamount to an express finding against the credibility of the defendant" (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1983).).

 Although the State now agrees with Finley that Finley did not know the maximum applicable penalty at the time of his plea, the State did not do so below, and the circuit court found that Finley knew the maximum applicable penalty. In conducting our inquiry in this case, "this court accepts the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous." State v. Taylor, 2013 WI 34, ¶ 25, 347 Wis. 2d 30, 829 N.W.2d 482 (emphases added) (citation omitted). The circuit court's finding has never been displaced; the court of appeals did not determine that the finding was clearly erroneous. State v. Finley, 2015 WI App 79, ¶ 23, 365 Wis. 2d 275, 872 N.W.2d 344.

 The plea questionnaire and circuit court informed Finley he faced a potential of "19 years, 6 months confinement." While the word "confinement" might be construed to mean initial confinement, Finley's postconviction motion confirms that he understood it to mean "term of imprisonment," as he requested in that motion "that the court enter an order permitting Finley to withdraw his no contest plea; or alternatively, that the court modify the judgment of conviction to a maximum bifurcated sentence of 19.5years, in keeping with the information Finley received at the plea hearing." (Emphasis added.)